**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No.: _____

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY CO.,

      Plaintiffs,                                       **Jury Trial Demanded**

vs.

TITAN WELLNESS CENTER OF FORT MYERS, L.L.C.,
HOA H. NGUYEN, D.C., ISO-DIAGNOSTICS TESTING,
INC., DAVID BARUCH, JOEL D. STEIN, D.O., P.A., and
JOEL D. STEIN, D.O.,

      Defendants.

_____/

## COMPLAINT

Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue Defendants and allege as follows:

1.      This action seeks to recover more than $2,800,000.00 that Defendants wrongfully obtained from GEICO by submitting thousands of fraudulent and unlawful no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants Titan Wellness Center of Fort Myers, L.L.C. ("Titan Wellness"), ISO-Diagnostics Testing, Inc. ("ISO-Diagnostics"), and Joel D. Stein, D.O., P.A. ("Stein P.A.") relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services and goods, including purported examinations, physical therapy services, chiropractic services, range of motion testing, muscle strength testing, ligament laxity testing, and home medical equipment ("HME")

(collectively, the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies.

2.     In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent and unlawful PIP claims that Defendants have submitted through Titan Wellness, ISO-Diagnostics, and Stein P.A., because:

(i)      at all relevant times: (a) Titan Wellness, ISO-Diagnostics, and Stein P.A. operated in violation of the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); (b) Titan Wellness, ISO-Diagnostics, and Stein P.A. operated in violation of Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); (c) Titan Wellness, ISO-Diagnostics, and Stein P.A. operated in violation of Florida's anti-kickback statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute"); and (d) Titan Wellness operated in violation of Florida law governing home medical equipment provider licensure (the "HME Licensing Laws"), Fla. Stat. §§ 400.93 and 408.806;

(ii)     the underlying Fraudulent Services were not medically necessary, and were provided -- to the extent that they were provided at all -- pursuant to pre-determined fraudulent protocols designed to financially enrich Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iii)    in many cases, the Fraudulent Services never were provided in the first instance; and

(iv)     the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

3.     Each and every charge submitted through Titan Wellness, ISO-Diagnostics, and Stein, P.A. since at least 2017 has been fraudulent and unlawful for the reasons set forth herein. The charts annexed hereto as Exhibits "1" - "3" set forth a large and representative sample of the fraudulent and unlawful claims that have been identified to date that have been submitted to GEICO by mail through Titan Wellness, ISO-Diagnostics, and Stein, P.A.

4.      The Defendants' interrelated fraudulent schemes began no later than 2017, and have continued uninterrupted since that time.

## THE PARTIES

### I.      Plaintiffs

5.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Nebraska corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

### II.      Defendants

6.      Defendant Hoa H. Nguyen, D.C. ("Nguyen") resides in and is a citizen of Florida.

7.      Nguyen was licensed to practice chiropractic in Florida on September 18, 2009, but never has been licensed as a physician.

8.      Nguyen was the member and owner of Titan Wellness, purported to perform or directly supervise virtually all of the Fraudulent Services at Titan Wellness, and used Titan Wellness as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

9.      Defendant Titan Wellness is a Florida limited liability company with its principal place of business in Fort Myers, Florida.

10.      Titan Wellness was organized in Florida on or about July 7, 2015, had Nguyen as its member and owner, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

11.      At all relevant times, Titan Wellness falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

12.     Defendant David Baruch ("Baruch") resides in and is a citizen of Florida.

13.     Upon information and belief based on a review of Florida Department of Health records, Baruch is not a licensed physician or other licensed health care professional.

14.     Baruch owned and controlled ISO-Diagnostics, and used ISO-Diagnostics as a vehicle to submit fraudulent and unlawful no-fault insurance billing to GEICO and other insurers.

15.     Defendant ISO-Diagnostics is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

16.     ISO-Diagnostics was incorporated in Florida on or about April 10, 2005, was owned by Baruch, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

17.     At all times, ISO-Diagnostics falsely purported to a properly licensed health care clinic that operated in compliance with the licensing and operating requirements set forth in the Clinic Act.

18.     Defendant Joel D. Stein, D.O. ("Stein") resides in and is a citizen of Florida.

19.     Stein was licensed to practice medicine in Florida on June 30, 1984.

20.     Stein owned and controlled Stein P.A., purported to perform or directly supervise virtually all of the Fraudulent Services at Stein P.A., falsely purported to serve as medical director at ISO-Diagnostics, and caused fraudulent and unlawful PIP insurance billing to be submitted through Stein P.A. and ISO-Diagnostics to GEICO and other insurers.

21.     Defendant Stein P.A. is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

4

22.     Stein P.A. was incorporated in Florida on or about March 16, 1987, was owned by Stein, and was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

23.     At all relevant times, Stein P.A. falsely purported to be exempt from health care clinic licensure requirements pursuant to Fla. Stat. § 400.9905(4)(g).

### III.    Other Relevant Individuals

24.     Although GEICO has not named them as Defendants in this Complaint, Rosemary Sachs, A.P.R.N. ("Sachs") and Kris Poncev ("Poncev") are relevant to understanding Plaintiffs' claims in this action.

25.     Sachs is licensed in Florida as an advanced practice registered nurse, and -- at Stein and Stein P.A.'s direction -- purported to perform many of the Fraudulent Services that were billed through Stein P.A. to GEICO.

26.     Upon information and belief based on a review of Florida Department of Health records, Poncev is not licensed to practice any health care profession. Even so, Poncev -- at Baruch, ISO-Diagnostics, and Stein's direction -- purported to perform many of the Fraudulent Services that were billed through ISO-Diagnostics to GEICO.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

28.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

29.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

30.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

### I.     Brief Overview of Pertinent Law Governing No-Fault Insurance Reimbursement

31.     Florida requires automobile insurers such as GEICO to provide PIP insurance benefits ("PIP Benefits") to Insureds when they are injured in a motor vehicle accident. See Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

32.     Under the No-Fault Law, a health care services provider that possesses a valid assignment of PIP Benefits from an Insured and that provides medically necessary health care services to an Insured may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration insurance claim form (known as the "HCFA-1500 form" or "CMS-1500" form).

33.     In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided, medically necessary, and the bill for the service cannot misrepresent the nature or extent of the service that was provided. Furthermore, insurers such as GEICO are not required to pay anyone who knowingly submits a false or misleading statement relating to a PIP claim or charges. See Fla. Stat. § 627.736.

34.     PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines

that the injured person suffered from an "emergency medical condition", in which case health care providers can be reimbursed up to $10,000.00 for health care services. See Fla. Stat. § 627.736.

35.     Pursuant to the No-Fault Law, an "emergency medical condition" means a "medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health. (b) serious impairment to bodily functions. (c) serious dysfunction of any bodily organ or part." Fla. Stat. § 627.732.

36.     Additionally, in order for a health care service to be eligible for PIP reimbursement, the applicable claim form must set forth the professional license number of the provider who personally performed or directly supervised the underlying health care service, in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials." See Fla. Stat. § 627.736.

37.     Moreover, under Florida law, subject to limited exceptions not applicable here, entities providing home use durable medical equipment ("HME") must be licensed by the Florida Agency for Health Care Administration. See Fla. Stat. § 400.93(1). Insurers such as GEICO are not required to pay PIP reimbursement to HME providers that unlawfully operate in violation of Florida HME licensure requirements.

38.     Furthermore, Florida's Patient Brokering Act, Fla. Stat. § 817.505, broadly prohibits any person from offering, paying soliciting, or receiving any commission, bonus, rebate, kickback, or bribe -- directly or indirectly, in cash or in kind -- or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

39.     Likewise, Florida's Anti-Kickback Statute, Fla. Stat. § 456.054, prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients. Violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

40.     Insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Patient Brokering Act or Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided.

41.     Subject to certain limited exceptions, a license issued by the Florida Agency for Health Care Administration is required in order to operate a health care clinic in Florida. See Fla. Stat. § 400.991(1)(a).

42.     However, the Clinic Act provides an exemption from the clinic licensing requirements for:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license … .

Fla. Stat. § 400.9905(4)(g)(emphasis added).

43.     In order to qualify for the "wholly owned" exemption under the Clinic Act, the licensed health care practitioner has a continuing obligation to supervise the business activities of the clinic and remain legally responsible for the entity's compliance with all federal and state laws.

44.     Pursuant to the Clinic Act, clinics operating in Florida without a valid exemption from the licensing requirements must -- among other things -- appoint a medical director who must

8

"[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful", and take immediate corrective action upon discovery of a fraudulent or unlawful charge. See Fla. Stat. § 400.9935(1).  In addition, a clinic medical director must "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided." See Fla. Stat. § 400.9935(1).

45.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating in violation of this part . . . is an unlawful charge." See Fla. Stat. § 400.9935(3).

**II.     Defendants' Interrelated Fraudulent Schemes**

46.     Since at least 2017, and continuing through the present day, the Defendants masterminded and implemented interrelated fraudulent schemes in which they billed GEICO millions of dollars, or caused GEICO to be billed millions of dollars, for unlawful, medically unnecessary, illusory, and otherwise non-reimbursable services.

**A.     The Unlawful Operation of Titan Wellness Without Supervision by Nguyen**

47.     Although Titan Wellness purported to be exempt from the Clinic Act's health care clinic licensure requirements, Titan Wellness operated without a valid exemption and, as a result, operated as an unlicensed health care clinic in violation of the Clinic Act.

48.     In particular, Nguyen failed to supervise Titan Wellness's business activities -- as required by the Clinic Act -- and, as a result, Titan Wellness did not qualify for the "wholly owned" exemption from the Clinic Act's health care clinic licensure requirements.

49.     Nguyen did not legitimately supervise the business activities of Titan Wellness, inasmuch as Nguyen never conducted reviews of the billing or treatment records from Titan Wellness to ensure that the billing was not fraudulent or unlawful, and -- to the contrary -- directed

the submission of the fraudulent and unlawful charges through Titan Wellness to GEICO and other insurers.

50.    Indeed, given the fraudulent treatment and billing protocol described below -- which was pervasive across all of the billing submitted to GEICO through Titan Wellness -- there is simply no way that Nguyen could have legitimately supervised the business activities of Titan Wellness to ensure that the billing was not fraudulent or ensure compliance with all applicable federal and state laws as required by the Clinic Act.

51.    Had Nguyen legitimately supervised the business activities of Titan Wellness, he would have noted, among other things, that:

(i)    Titan Wellness was -- as set forth herein -- operated in pervasive violation of, variously, the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and HME licensing laws;

(ii)   the Fraudulent Services purportedly provided by and billed through Titan Wellness were not medically necessary, and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol;

(iii)  in many cases, the Fraudulent Services purportedly provided by and billed through Titan Wellness were never provided in the first instance; and

(iv)   the billing codes used for the Fraudulent Services purportedly provided by and billed through Titan Wellness misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

52.    Accordingly, Titan Wellness never qualified for the "wholly owned" exemption from licensure as a "health care clinic" set forth in Section 400.9905(4)(g). Nor did Titan Wellness qualify for any other exemption to the Clinic Act, or have a medical director as required for a health care clinic without an exemption. As a result, Titan Wellness operated -- at all relevant times -- in violation of the Clinic Act.

**B.      The Unlawful Operation of Stein P.A. Without Supervision by Stein**

53.      Furthermore, Stein P.A. purported to be exempt from the Clinic Act's health care clinic licensure requirements, but operated without a valid exemption and, as a result, operated as an unlicensed health care clinic in violation of the Clinic Act.

54.      In particular, Stein failed to supervise Stein P.A.'s business activities -- as required by the Clinic Act -- and, as a result, Stein P.A. did not qualify for the "wholly owned" exemption from the Clinic Act's health care clinic licensure requirements.

55.      Stein did not legitimately supervise the business activities of Stein P.A., inasmuch as Stein never conducted reviews of the billing or treatment records from Stein P.A. to ensure that the billing was not fraudulent or unlawful, and -- to the contrary -- directed the submission of the fraudulent and unlawful charges through Stein P.A. to GEICO and other insurers.

56.      Indeed, given the fraudulent treatment and billing protocol described below -- which was pervasive across all of the billing submitted to GEICO through Stein P.A. -- there is simply no way that Stein could have legitimately supervised the business activities of Stein P.A. to ensure that the billing was not fraudulent or ensure compliance with all applicable federal and state laws as required by the Clinic Act.

57.      Had Stein legitimately supervised the business activities of Stein P.A., he would have noted, among other things, that:

(i)      Stein PA. was -- as set forth herein -- operated in pervasive violation of, variously, the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute;

(ii)     the Fraudulent Services purportedly provided by and billed through Stein P.A. were not medically necessary, and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol;

(iii)    in many cases, the Fraudulent Services purportedly provided by and billed through Stein P.A. were never provided in the first instance; and

(iv)   the billing codes used for the Fraudulent Services purportedly provided by and billed through Stein P.A. misrepresented and exaggerated the level of services that were provided in order to fraudulently inflate the charges submitted to GEICO.

58.    Accordingly, Stein P.A. never qualified for the "wholly owned" exemption from licensure as a "health care clinic" set forth in Section 400.9905(4)(g). Nor did Stein P.A. qualify for any other exemption to the Clinic Act, or have a medical director as required for a health care clinic without an exemption. As a result, Stein P.A. operated -- at all relevant times -- in violation of the Clinic Act.

**C.     The Unlawful Operation of ISO-Diagnostics Without a Legitimate Medical Director**

59.    Because Baruch was not a licensed health care professional, Baruch could not obtain a health care clinic license for ISO-Diagnostics, lawfully operate ISO-Diagnostics, or use ISO-Diagnostics as a vehicle to submit PIP billing to GEICO and other insurers, unless he retained a licensed physician to serve as ISO-Diagnostics' medical director. See Fla. Stat. §§ 400.9905, 440.9935.

60.    However, if Baruch recruited a legitimate physician to serve as a legitimate medical director at ISO-Diagnostics, the physician actually would be obligated to fulfill the statutory requirements applicable to a clinic medical director. See, e.g., Fla. Stat. § 400.9935(1). By extension, any such legitimate medical director would impede Baruch's ability to use ISO-Diagnostics as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other Florida automobile insurers.

61.    Accordingly, Baruch required a physician willing to falsely pose as the "medical director" at ISO-Diagnostics, but who -- in actuality -- would not even attempt to fulfill the statutory requirements applicable to a clinic medical director, and thereby permit Baruch to use

ISO-Diagnostics as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

62.     Therefore, Baruch retained Stein, a licensed physician who in exchange for compensation was willing to falsely pose as the legitimate medical director of ISO-Diagnostics.

63.     In order to circumvent Florida law and induce the Florida Agency for Health Care Administration to maintain ISO-Diagnostics' licensure and to permit ISO-Diagnostics to operate as a clinic, Baruch entered into a secret scheme with Stein. In exchange for compensation from Baruch and ISO-Diagnostics, Stein agreed to falsely represent, to the Florida Agency for Health Care Administration, to the Insureds who sought treatment at ISO-Diagnostics, and to the insurers including GEICO that received PIP claims from ISO-Diagnostics, that he was the true medical director at ISO-Diagnostics, and that he truly fulfilled the statutory requirements applicable to clinic medical directors at ISO-Diagnostics.

64.     However, Stein never genuinely served as medical director at ISO-Diagnostics. Instead, from the beginning of his association with ISO-Diagnostics as its phony "medical director", Stein ceded decision-making and oversight regarding health care services at ISO-Diagnostics, and the resulting billing, to Baruch.

65.     Stein never legitimately served as medical director at ISO-Diagnostics, inasmuch as he never conducted systematic reviews of ISO-Diagnostics' billings to ensure that the billings were not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through ISO-Diagnostics, much less take any immediate corrective action. See Fla. Stat. § 400.9935(1).

66.     Had Stein legitimately served as ISO-Diagnostics' medical director, Stein would have noted, among other things, that ISO-Diagnostics was operating in pervasive violation of the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute.

67.     In fact, true authority over the provision of health care services through ISO-Diagnostics, and the resulting billing -- including the authority that would, at a legitimate clinic, be vested in the medical director -- was held at all times by Baruch.

68.     Stein unlawfully permitted Baruch to dictate the manner in which Insureds would be treated at ISO-Diagnostics, and to dictate the manner in which health care services at ISO-Diagnostics would be billed to GEICO and other insurers, because he wanted to continue profiting through ISO-Diagnostics' fraudulent and unlawful PIP billing.

69.     Baruch used the façade of Stein's "appointment" as ISO-Diagnostics' phony "medical director" to do indirectly what he was forbidden from doing directly -- namely: (i) to operate a clinic without a legitimate medical director; (ii) to engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at ISO-Diagnostics; and (iii) to use ISO-Diagnostics as a vehicle to submit a large amount of fraudulent and unlawful PIP billing to GEICO and other insurers.

**D.     The Violations of the HME Licensing Law**

70.     At all relevant times, Titan Wellness purported to provide Insureds with HME as part of the Defendants' fraudulent, pre-determined treatment protocol.

71.     However, Titan Wellness never obtained an HME license to provide HME.

72.     Accordingly, Titan Wellness operated -- at all relevant times -- in violation of the HME Licensing Laws.

73.     In the claims for HME identified in Exhibit "1", Titan Wellness and Nguyen falsely represented that Titan Wellness was in compliance with the HME Licensing Laws and was entitled to be reimbursed on their HME charges, when in fact Titan Wellness was not in compliance with the HME Licensing Laws, and was not entitled to collect PIP Benefits, because Titan Wellness purported to provide HME without proper licensure to do so.

**E.     The Violations of the Patient Brokering Act and the Anti-Kickback Statute**

74.     To the extent that the Insureds in the claims set forth in Exhibits "1" - "3" suffered any injuries at all in their automobile accidents, they virtually always were minor soft tissue injuries such as sprains or strains. These minor soft tissue injuries did not constitute legitimate "emergency medical conditions".

75.     For instance, and in keeping with the fact that the Insureds in the claims identified in Exhibits "1" - "3" did not legitimately suffer from any "emergency medical conditions", in the substantial majority of the claims identified in Exhibits "1" - "3" the Insureds did not seek treatment at any hospital as the result of their accidents.

76.     To the limited extent that the Insureds did report to a hospital after their accidents, they virtually always were briefly observed on an outpatient basis and then sent on their way after a few hours with, at most, a minor sprain, strain, or similar soft-tissue injury diagnosis.

77.     Furthermore, in most cases, contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all.

78.     Even so, Titan Wellness and Nguyen wanted to bill GEICO and other insurers for a large amount of expensive and medically unnecessary examinations, chiropractic, physical

therapy, testing, and HME, without regard for the fact that the Insureds had not suffered any injuries that would warrant these Fraudulent Services.

79.     However, Titan Wellness and Nguyen know that -- unless they could get a physician, physician assistant, or advanced practice registered nurse to falsely report that their patients suffered from "emergency medical conditions" -- they would be limited to recovering $2,500.00 in PIP Benefits per patient, as opposed to the $10,000.00 per patient they could potentially recover if the patient had an "emergency medical condition" diagnosis.

80.     At the same time, Stein, Stein P.A., Baruch, and ISO-Diagnostics wanted to submit as much PIP billing as possible for expensive and medically unnecessary examinations and testing, without regard for the fact that the Insureds had not suffered any injuries that would warrant these examinations or tests.

81.     However, in order to bill GEICO and other insurers for medically unnecessary and illusory examinations and testing, Stein, Stein P.A., Baruch, and ISO-Diagnostics needed to obtain patient referrals from other health care providers, such as Titan Wellness and Nguyen.

82.     Accordingly, Titan Wellness, Nguyen, Stein, Stein P.A., Baruch, and ISO-Diagnostics entered into a secret and unlawful patient brokering agreement, whereby:

(i)     In exchange for patient referrals from Titan Wellness and Nguyen for expensive and medically unnecessary examinations and muscle strength testing, Stein and Stein P.A. provided the Insureds with phony "emergency medical condition" diagnoses, which enabled Titan Wellness and Nguyen to submit substantial additional PIP billing per Insured for medically unnecessary chiropractic, physical therapy, testing, and HME.

(ii)     Then, after receiving these patient referrals from Titan Wellness and Nguyen in exchange for their phony "emergency medical condition" diagnoses, Stein and Stein P.A. referred the Insureds on to Baruch and ISO-Diagnostics for expensive and medically useless range of motion and muscle strength testing, in exchange for monetary compensation from Baruch and ISO-Diagnostics.

16

83.     In reality, these were "pay-to-play" arrangements that caused Nguyen, Titan Wellness, Stein, and Stein P.A. to provide medically unnecessary patient referrals in violation of the Patient Brokering Act and Anti-Kickback Statute.

84.     For example:

(i)     On or about April 10, 2019, Titan Wellness and Nguyen referred an Insured named JF to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about April 10, 2019, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(ii)    On or about July 1, 2019, Titan Wellness and Nguyen referred an Insured named MI to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about July 1, 2019, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(iii)   On or about August 20, 2019, Titan Wellness and Nguyen referred an Insured named DE to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to

the Insured. Then, or about August 20, 2019, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(iv)    On or about January 9, 2020, Titan Wellness and Nguyen referred an Insured named MD to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about January 9, 2020, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(v)     On or about June 11, 2020 Titan Wellness and Nguyen referred an Insured named ME to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about June 11, 2020, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(vi)    On or about August 27, 2020, Titan Wellness and Nguyen referred an Insured named PB to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about August 27, 2020, in exchange for unlawful monetary

compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(vii)    On or about September 16, 2020, Titan Wellness and Nguyen referred an Insured named JG to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about September 16, 2020, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(viii)    On or about March 2, 2021, Titan Wellness and Nguyen referred an Insured named KK to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about March 2, 2021, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(ix)    On or about May 27, 2021, Titan Wellness and Nguyen referred an Insured named CD to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about May 27, 2021, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the

Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

(x)     On or about May 27, 2021, Titan Wellness and Nguyen referred an Insured named GP to Stein P.A. and Stein for a medically unnecessary examination and muscle strength tests, which then were billed through Stein P.A. to GEICO. As unlawful compensation for the referral, Stein P.A. and Stein falsely diagnosed the Insured with an "emergency medical condition", which enabled Titan Wellness and Nguyen to submit thousands of dollars in additional PIP billing through Titan Wellness to GEICO in connection with the medically unnecessary chiropractic, physical therapy, and other Fraudulent Services that they purported to provide to the Insured. Then, or about May 27, 2021, in exchange for unlawful monetary compensation from Baruch and ISO-Diagnostics, Stein P.A. and Stein caused the Insured to be referred to ISO-Diagnostics for medically unnecessary range of motion and muscle strength tests, which were billed through ISO-Diagnostics to GEICO. All of these referrals violated the Patient Brokering Act and Anti-Kickback Statute.

85.     These are only representative examples. In the claims identified in Exhibits "1" - "3", the Defendants routinely and unlawfully made and received patient referrals in exchange for compensation, in violation of the Patient Brokering Act and Anti-Kickback Statute.

86.     In this context, there are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

87.     An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

88.     As set forth above, in the claims identified in Exhibits "1" - "3", almost all of the Insureds whom the Defendants purported to treat were involved in relatively minor accidents, and did not suffer any serious injuries in their accidents, to the extent that they suffered any injuries at all.

89.     It is highly improbable that any two or more Insureds involved in any one of the relatively minor automobile accidents in the claims identified in Exhibits "1" - "3" would: (i) suffer from injuries so similar that they would all require referrals from Nguyen and Titan Wellness to Stein and Stein P.A. on or about the same date; (ii) receive "emergency medical condition" diagnoses from Stein and Stein P.A.; and then (iii) require referrals from Stein and Stein P.A. to ISO-Diagnostics and Baruch for range of motion and muscle strength testing.

90.     It is even more improbable -- to the point of impossibility -- that this would occur repeatedly within the cohort of Insureds who purportedly received treatment from the Defendants.

91.     Even so -- and in keeping with the fact that the Defendants' referrals were based upon unlawful compensation, rather than medical necessity -- this repeatedly occurred within the cohort of Insureds who purportedly received treatment from the Defendants.

92.     For example:

(i)     On September 11, 2018, two Insureds -- NG and MO -- were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not require referrals from Titan Wellness and Nguyen to Stein and Stein P.A., and from Stein and Stein P.A. to Baruch and ISO-Diagnostics, on or about the same date after their accident. Even so, on September 18, 2018, Titan Wellness and Nguyen referred both of these Insureds to Stein and Stein P.A. for medically unnecessary examinations and muscle strength testing, and Stein and Stein P.A. referred both of these Insureds to ISO-Diagnostics and Baruch for medically unnecessary range of motion and muscle strength testing, pursuant to the Defendants' unlawful patient brokering scheme.

(ii)    On January 21, 2019, two Insureds -- DT and MT -- were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Titan Wellness and Nguyen to Stein

and Stein P.A., and from Stein and Stein P.A. to Baruch and ISO-Diagnostics, on or about the same date weeks after their accident. Even so, on February 28, 2019, Titan Wellness and Nguyen referred both of these Insureds to Stein and Stein P.A. for medically unnecessary examinations and muscle strength testing, and Stein and Stein P.A. referred both of these Insureds to ISO-Diagnostics and Baruch for medically unnecessary range of motion and muscle strength testing, pursuant to the Defendants' unlawful patient brokering scheme.

(iii)     On July 30, 2019, <u>four</u> Insureds -- VE, DE, JE, and JT -- were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from Titan Wellness and Nguyen to Stein and Stein P.A., and from Stein and Stein P.A. to Baruch and ISO-Diagnostics, on or about the same date weeks after their accident. Even so, on August 20, 2019, Titan Wellness and Nguyen referred all four of these Insureds to Stein and Stein P.A. for medically unnecessary examinations and muscle strength testing, and Stein and Stein P.A. referred all four of these Insureds to ISO-Diagnostics and Baruch for medically unnecessary range of motion and muscle strength testing, pursuant to the Defendants' unlawful patient brokering scheme.

(iv)     On January 21, 2020, two Insureds -- SF and ES -- were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not both require referrals from Titan Wellness and Nguyen to Stein and Stein P.A., and from Stein and Stein P.A. to Baruch and ISO-Diagnostics, on or about the same date weeks after their accident. Even so, on February 19, 2020, Titan Wellness and Nguyen referred both of these Insureds to Stein and Stein P.A. for medically unnecessary examinations and muscle strength testing, and Stein and Stein P.A. referred both of these Insureds to ISO-Diagnostics and Baruch for medically unnecessary range of motion and muscle strength testing, pursuant to the Defendants' unlawful patient brokering scheme.

(v)     On May 15, 2021, <u>three</u> Insureds -- CD, GS, and HS -- were involved in the same automobile accident. These Insureds were different ages, in different physical condition, experienced the impact from different locations in the vehicle, and suffered different injuries in the accident, to the extent that they suffered any injuries at all. What is more, to the extent that these Insureds suffered any injuries in the accident, their injuries resolved or failed to resolve at different rates. These Insureds did not all require referrals from Titan Wellness and Nguyen to Stein and Stein P.A., and from Stein and Stein P.A. to Baruch and ISO-Diagnostics, on or

about the same date after their accident. Even so, on May 27, 2021, Titan Wellness and Nguyen referred all three of these Insureds to Stein and Stein P.A. for medically unnecessary examinations and muscle strength testing, and Stein and Stein P.A. referred all four of these Insureds to ISO-Diagnostics and Baruch for medically unnecessary range of motion and muscle strength testing, pursuant to the Defendants' unlawful patient brokering scheme.

93.     These are only representative examples. Pursuant to the Defendants' unlawful patient brokering scheme, Titan Wellness and Nguyen routinely referred multiple Insureds who had been involved in the same accident to Stein and Stein P.A. for medically unnecessary examinations and muscle strength testing, and Stein and Stein P.A. routinely referred those same Insureds to ISO-Diagnostics and Baruch for medically unnecessary range of motion and muscle strength testing, despite the fact that the Insureds were differently situated and in any case did not require the Defendants' Fraudulent Services.

94.     In the claims identified in Exhibits "1"--"3", Titan Wellness, Nguyen, ISO-Diagnostics, Baruch, Stein P.A., and Stein routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided -- to the extent that they were provided at all -- pursuant an illegal patient brokering and kickback scheme.

**F.      The Defendants' Fraudulent Treatment and Billing Protocols**

95.     In the claims identified in Exhibits "1" -- "3", almost none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

96.     Even so, in the claims identified in Exhibits "1" -- "3", the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to pre-determined, fraudulent protocols designed to maximize the billing that

they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

97.     The Defendants purported to provide their pre-determined fraudulent treatment protocols to the Insureds in the claims identified in Exhibits "1" -- "3" without regard for the Insureds' individual symptoms or presentation, or -- in most cases -- the total absence of any actual continuing medical problems arising from any actual automobile accidents.

98.     Each step in the Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

99.     No legitimate physician, chiropractor, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

100.    The Defendants permitted the fraudulent treatment and billing protocols described below to proceed under their auspices because: (i) Titan Wellness, Stein P.A., and ISO-Diagnostics were, at all relevant times, operating in violation of the Clinic Act, without legitimate oversight or medical directors who legitimately fulfilled their statutory duties as medical directors; and (ii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

**1.      The Fraudulent and Unlawful Claims for Initial Examinations at Titan Wellness**

101.    As a first step in the Defendants' fraudulent treatment and billing protocol, each of the Insureds in the claims identified in Exhibit "1" purportedly received an initial examination at Titan Wellness, with Nguyen purporting to personally perform or directly supervise virtually all of the initial examinations.

102.    As set forth in Exhibit "1", Titan Wellness and Nguyen then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT code 99203, typically resulting in a charge of $230.00 for each initial examination that they purported to provide.

103.    Pursuant to the American Medical Association's CPT Assistant, which governs reimbursement of PIP claims, at all relevant times the use of CPT code 99203 to bill for an initial patient examination represented -- among other things -- that: (a) the patient presented with problems of moderate severity; (b) the physician or chiropractor who conducted the examination spent at least 30 minutes of face-to-face time with the patient or the patient's family during the examination; (c) the physician or chiropractor who performed the examination conducted a "detailed" physical examination; and (d) the physician or chiropractor who performed the examination engaged in legitimate "low complexity" medical decision-making.

104.    In the claims for initial examinations identified in Exhibit "1", the charges for the initial examinations were fraudulent in that they misrepresented Titan Wellness' eligibility to collect PIP Benefits in the first instance.

105.    In fact, and as set forth herein, Titan Wellness never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

106.    As set forth below, the charges for the initial examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

a.    **Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

107.    To the extent that the Insureds in the claims identified in Exhibit "1" had any presenting problems at all as the result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

108.    Even so, in the claims for initial examinations identified in Exhibit "1", Titan Wellness and Nguyen falsely represented that the Insureds presented with problems of moderate severity.

109.    For example:

(i)     On September 1, 2017, an Insured named MA was involved in an automobile accident.  The contemporaneous police report indicated that there was minor damage to MA's vehicle, that there was minor damage to the other vehicle, and that MA's vehicle was drivable following the accident.  The police report further indicated that MA was not injured and did not complain of any pain at the scene.  In keeping with the fact that MA was not seriously injured, MA did not visit any hospital emergency room following the accident.  To the extent that MA experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of MA by Nguyen on September 19, 2017, Titan Wellness and Nguyen billed GEICO for an initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)    On September 21, 2018, an Insured named RJ was involved in an automobile accident.  The contemporaneous police report indicated that RJ's vehicle was drivable following the accident.  The police report further indicated that RJ was not injured and did not complain of any pain at the scene.  In keeping with the fact that RJ was not seriously injured, RJ did not visit any hospital emergency room following the accident.  To the extent that RJ experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of RJ by Nguyen on September 28, 2018, Titan Wellness and Nguyen billed GEICO for an initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)   On March 9, 2019, an Insured named WS was involved in an automobile accident.  The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to WS's vehicle, that there was minor damage to the other vehicle, and that WS's vehicle was drivable following the accident.  The police report further indicated that WS was not injured and did not

complain of any pain at the scene.  In keeping with the fact that WS was not seriously injured, WS did not visit any hospital emergency room following the accident.  To the extent that WS experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of WS on March 19, 2019, Titan Wellness and Nguyen billed GEICO for an initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iv)    On January 2, 2020, an Insured named MD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to the vehicles involved in the accident, and that MD's vehicle was drivable following the accident. The police report further indicated that MD was not injured and did not complain of any pain at the scene. In keeping with the fact that MD was not seriously injured, MD did not visit any hospital emergency room following the accident.  To the extent that MD experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of MD on January 3, 2020, Titan Wellness and Nguyen billed GEICO for an initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(v)    On February 22, 2021, an Insured named KK was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to the vehicles involved in the accident, and that KK's vehicle was drivable following the accident.  The police report further indicated that KK was not injured and did not complain of any pain at the scene.  In keeping with the fact that KK was not seriously injured, KK did not visit any hospital emergency room following the accident.  To the extent that KK experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of KK on February 24, 2021, Titan Wellness and Nguyen billed GEICO for an initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

110.    These are only representative examples. In the claims for initial examinations identified in Exhibit "1", Titan Wellness and Nguyen virtually always falsely represented that the Insureds presented with problems of moderate severity in order to: (i) create a false basis for their charges for the examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations involving presenting problems of

low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent

Services that the Defendants purported to provide to the Insureds.

**b.     Misrepresentations Regarding "Detailed" Physical Examinations**

111.    In addition, in the claims for initial examinations identified in Exhibit "1", when

Titan Wellness and Nguyen billed GEICO for putative initial examinations using CPT code 99203,

Titan Wellness and Nguyen falsely represented that the health care provider who purported to

conduct the examinations -- namely Nguyen -- conducted "detailed" physical examinations of the

Insureds who purportedly received the examinations.

112.    In fact, with respect to the claims for initial examinations under CPT code 99203

that are identified in Exhibit "1", neither Nguyen nor any other chiropractor or health care provider

associated with Titan Wellness ever conducted a "detailed" patient examination because: (i)

pursuant to the CPT Assistant, a "detailed" physical examination requires -- among other things

-- that the physician or other health care provider performing the examination document an

extended examination of the affected body areas and other symptomatic or related organ systems;

but (ii) neither Nguyen, nor any other physician or health care associated with Titan Wellness ever

documented an extended examination of the Insureds' musculoskeletal systems or any of the

Insureds' other systems.

113.    For example:

(i)     On September 19, 2017, Titan Wellness and Nguyen billed GEICO under CPT code
        99203 for an initial examination that Nguyen purported to perform on an Insured
        named MA, and thereby represented that Nguyen had provided a "detailed"
        physical examination to MA. However, Nguyen did not document an extended
        examination of MA's musculoskeletal system, despite the fact that -- to the extent
        MA had any complaints at all as the result of her automobile accident -- they were
        limited to musculoskeletal complaints.

(ii)    On March 19, 2019, Titan Wellness and Nguyen billed GEICO under CPT code
        99203 for an initial examination that Nguyen purported to perform on an Insured

named WS, and thereby represented that Nguyen had provided a "detailed" physical examination to WS. However, Nguyen did not document an extended examination of WS's musculoskeletal system, despite the fact that -- to the extent WS had any complaints at all as the result of her automobile accident -- they were limited to musculoskeletal complaints.

(iii)   On May 2, 2019, Titan Wellness and Nguyen billed GEICO under CPT code 99203 for an initial examination that Nguyen purported to perform on an Insured named JL, and thereby represented that Nguyen had provided a "detailed" physical examination to JL. However, Nguyen did not document an extended examination of JL's musculoskeletal system, despite the fact that -- to the extent JL had any complaints at all as the result of his automobile accident -- they were limited to musculoskeletal complaints.

(iv)   On January 3, 2020, Titan Wellness and Nguyen billed GEICO under CPT code 99203 for an initial examination that Nguyen purported to perform on an Insured named JS, and thereby represented that Nguyen had provided a "detailed" physical examination to JS. However, Nguyen did not document an extended examination of JS's musculoskeletal system, despite the fact that -- to the extent JS had any complaints at all as the result of her automobile accident -- they were limited to musculoskeletal complaints.

(v)   On February 24, 2021, Titan Wellness and Nguyen billed GEICO under CPT code 99203 for an initial examination that Nguyen purported to perform on an Insured named KK, and thereby represented that Nguyen had provided a "detailed" physical examination to KK. However, Nguyen did not document an extended examination of KK's musculoskeletal system, despite the fact that -- to the extent KK had any complaints at all as the result of his automobile accident -- they were limited to musculoskeletal complaints.

114.   These are only representative examples. In the claims for initial examinations identified in Exhibit "1", Titan Wellness and Nguyen virtually always falsely represented that they provided "detailed" physical examinations to the Insureds in order to create a false basis for their charges for the examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations that are not "detailed".

c.   **Misrepresentations Regarding the Extent of Medical Decision-Making**

115.   Moreover, in the claims for initial examinations identified in Exhibit "1", when Titan Wellness and Nguyen billed GEICO for putative initial examinations using CPT code 99203,

Titan Wellness and Nguyen falsely represented that the chiropractor who purported to conduct the examinations -- namely Nguyen -- engaged in some legitimate, low complexity medical decision-making in connection with the examinations.

116.   In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

117.   Rather, in the claims for initial examinations identified in Exhibit "1": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity -- much less mortality -- from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) Titan Wellness and Nguyen did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and provided a substantially similar, pre-determined sprain/strain or similar soft tissue injury "diagnoses" for every Insured, regardless of their true individual circumstances or presentation.

118.   For example:

(i)   On September 1, 2017, an Insured named MA was involved in an automobile accident.   The contemporaneous police report indicated that there was minor damage to MA's vehicle, that there was minor damage to the other vehicle, and that MA's vehicle was drivable following the accident.   The police report further indicated that MA was not injured and did not complain of any pain at the scene. In keeping with the fact that MA was not seriously injured, MA did not visit any hospital emergency room following the accident.   To the extent that MA experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 19, 2017, Nguyen purported to conduct an initial examination of MA at Titan Wellness. To the extent that Nguyen performed the examination in the first instance, Nguyen did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Nguyen did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Nguyen provided MA with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually

30

every other Insured. Furthermore, neither MA's presenting problems, nor the treatment plan provided to MA by Titan Wellness and Nguyen presented any risk of significant complications, morbidity, or mortality. To the contrary, MA did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Titan Wellness and Nguyen consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to MA. Even so, Titan Wellness and Nguyen billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Nguyen engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)     On September 21, 2018, an Insured named PJ was involved in an automobile accident. The contemporaneous police report indicated that PJ's vehicle was drivable following the accident. The police report further indicated that PJ was not injured and did not complain of any pain at the scene.  In keeping with the fact that PJ was not seriously injured, PJ did not visit any hospital emergency room following the accident.  To the extent that PJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 28, 2018, Nguyen purported to conduct an initial examination of PJ at Titan Wellness. To the extent that Nguyen performed the examination in the first instance, Nguyen did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Nguyen did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Nguyen provided PJ with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither PJ's presenting problems, nor the treatment plan provided to PJ by Titan Wellness and Nguyen presented any risk of significant complications, morbidity, or mortality. To the contrary, PJ did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Titan Wellness and Nguyen consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to PJ. Even so, Titan Wellness and Nguyen billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Nguyen engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iii)    On September 21, 2018, an Insured named RJ was involved in an automobile accident. The contemporaneous police report indicated that RJ's vehicle was drivable following the accident. The police report further indicated that RJ was not injured and did not complain of any pain at the scene.  In keeping with the fact that RJ was not seriously injured, RJ did not visit any hospital emergency room following the accident.  To the extent that RJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 28, 2018, Nguyen purported to conduct an initial examination of RJ at Titan Wellness. To the extent that Nguyen performed the examination in the first instance, Nguyen did not retrieve, review, or analyze any significant amount of

medical records, diagnostic tests, or other information in connection with the examination. Moreover, Nguyen did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Nguyen provided RJ with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither RJ's presenting problems, nor the treatment plan provided to RJ by Titan Wellness and Nguyen presented any risk of significant complications, morbidity, or mortality. To the contrary, RJ did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Titan Wellness and Nguyen consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to RJ. Even so, Titan Wellness and Nguyen billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Nguyen engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)    On March 9, 2019, an Insured named WS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to WS's vehicle, that there was minor damage to the other vehicle, and that WS's vehicle was drivable following the accident.  The police report further indicated that WS was not injured and did not complain of any pain at the scene.  In keeping with the fact that WS was not seriously injured, WS did not visit any hospital emergency room following the accident.  To the extent that WS experienced any health problems at all as a result of the accident, they were of low or minimal severity. On March 19, 2019, Nguyen purported to conduct an initial examination of WS at Titan Wellness. To the extent that Nguyen performed the examination in the first instance, Nguyen did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Nguyen did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Nguyen provided WS with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither WS's presenting problems, nor the treatment plan provided to WS by Titan Wellness and Nguyen presented any risk of significant complications, morbidity, or mortality. To the contrary, WS did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Titan Wellness and Nguyen consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to WS. Even so, Titan Wellness and Nguyen billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Nguyen engaged in some legitimate, low complexity medical decision-making during the purported examination.

(v)     On January 2, 2020, an Insured named MD was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to the vehicles involved in the accident, and that MD's vehicle was drivable following the accident.  The police report further

indicated that MD was not injured and did not complain of any pain at the scene. In keeping with the fact that MD was not seriously injured, MD did not visit any hospital emergency room following the accident. To the extent that MD experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 3, 2020, Nguyen purported to conduct an initial examination of MD at Titan Wellness. To the extent that Nguyen performed the examination in the first instance, Nguyen did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Nguyen did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Nguyen provided MD with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither MD's presenting problems, nor the treatment plan provided to MD by Titan Wellness and Nguyen presented any risk of significant complications, morbidity, or mortality. To the contrary, MD did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Titan Wellness and Nguyen consisted of medically unnecessary chiropractic and physical therapy services, which did not pose the least bit of risk to MD. Even so, Titan Wellness and Nguyen billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Nguyen engaged in some legitimate, low complexity medical decision-making during the purported examination.

119. In keeping with the fact that these putative "diagnoses" were pre-determined and phony, Titan Wellness and Nguyen frequently issued substantially identical, phony "diagnoses", on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

For example:

(i) On September 12, 2017, three Insureds -- TL, TR, and LT -- were involved in the same automobile accident. Thereafter -- incredibly -- all three Insureds presented at Titan Wellness for initial examinations by Nguyen on the exact same date, September 21, 2017. TL, TR, and LT were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that TL, TR, and LT suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Titan Wellness and Nguyen provided TL, TR, and LT with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all three of them.

33

(ii)     On July 23, 2018, two Insureds -- JI and MM -- were involved in the same automobile accident. Thereafter -- incredibly -- both Insureds presented at Titan Wellness for initial examinations by Nguyen on the <u>exact same date</u>, August 23, 2018. JI and MM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JI and MM suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Titan Wellness and Nguyen provided JI and MM with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iii)    On January 27, 2019, two Insureds -- KN and PN -- were involved in the same automobile accident. Thereafter -- incredibly -- both Insureds presented at Titan Wellness for initial examinations by Nguyen on the <u>exact same date</u>, February 8, 2019. KN and PN were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that KN and PN suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Titan Wellness and Nguyen provided KN and PN with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iv)    On January 2, 2020, two Insureds -- MD and JS -- were involved in the same automobile accident. Thereafter -- incredibly -- both Insureds presented at Titan Wellness for initial examinations by Nguyen on the <u>exact same date</u>, January 3, 2020. MD and JS were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that MD and JS suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Titan Wellness and Nguyen provided MD and JS with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(v)     On May 15, 2021, <u>three</u> Insureds -- CD, HP, and GP -- were involved in the same automobile accident. Thereafter -- incredibly -- all three Insureds presented at Titan Wellness for initial examinations by Nguyen on the <u>exact same date</u>, May 17, 2021. CD, HP, and GP were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that CD, HP, and GP suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Titan Wellness and Nguyen provided CD, HP, and GP with substantially identical, phony soft tissue injury "diagnoses", and

recommended a substantially identical course of medically unnecessary treatment to all of them.

120.     These are only representative examples. In the claims for initial examinations that are identified in Exhibit "1", Titan Wellness and Nguyen frequently issued substantially identical "diagnoses", on or about the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that the Insureds were differently situated and, in any case, did not require the treatment.

121.     Titan Wellness and Nguyen routinely inserted these false "diagnoses" in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

122.     In the claims for initial examinations identified in Exhibit "1", Titan Wellness and Nguyen routinely falsely represented that the putative examinations involved legitimate, low complexity medical decision making in order to create a false basis to bill for the initial examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at a higher rate than examinations or examinations that do not require any complex medical decision-making at all.

123.     In this context, Nguyen -- who at all relevant times purported to own Titan Wellness -- did not, and could not have, legitimately supervised the business activities of Titan Wellness.

124.     Had Nguyen actually supervised the business activities of Titan Wellness, he would have noted -- among other things -- that Titan Wellness' billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

35

125.     Nguyen failed to do so, because he never actually supervised the business activities of Titan Wellness.

126.     In the claims for initial examinations identified in Exhibit "1", Titan Wellness, and Nguyen routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)   Titan Wellness never was eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as it was operated in violation of the Clinic Act, Patient Brokering Act, and Anti-Kickback Statute.

**2.      The Fraudulent and Unlawful Charges for Follow-Up Examinations at Titan Wellness**

127.     In addition to their fraudulent initial examinations, Titan Wellness and Nguyen purported to subject the substantial majority of the Insureds in the claims identified in Exhibit "1" to multiple, fraudulent follow-up examinations during the course of their fraudulent treatment protocol.

128.     Nguyen purported to personally perform the virtually all of the follow-up examinations in the claims identified in Exhibit "1".

129.     As set forth in Exhibit "1", Titan Wellness and Nguyen then billed the follow-up examinations to GEICO under: (i) CPT code 99213, typically resulting in a charge of $150.00 for each putative examination; or (iii) 99214, typically resulting in a charge of $250.00 for each putative examination.

36

130.    Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99213 to bill for a follow-up examination represented -- among other things -- that: (i) the patient presented with problems of low to moderate severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took an "expanded problem focused" patient history; (b) conducted an "expanded problem focused physical examination"; and (c) engaged in medical decision-making of "low complexity".

131.    Pursuant to the CPT Assistant, at all relevant times the use of CPT code 99214 to bill for a follow-up examination represented -- among other things -- that: (i) the patient presented with problems of moderate to high severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took a "detailed" patient history; (b) conducted a "detailed" physical examination; and (c) engaged in medical decision-making of "moderate complexity".

132.    In the claims for follow-up examinations identified in Exhibit "1", the charges for the follow-up examinations were fraudulent in that they misrepresented Titan Wellness' eligibility to collect PIP Benefits in the first instance.

133.    In fact, and as set forth herein, Titan Wellness never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act.

134.    As set forth below, the charges for the follow-up examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature, extent, and results of the follow-up examinations.

a.       **Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

135.    To the extent that the Insureds in the claims identified in Exhibit "1" suffered any injuries at all in their automobile accidents, the injuries almost always were minor soft tissue injuries such as sprains and strains, which were of low or minimal severity, even at their onset.

136.    Minor soft tissue injuries such as strains and sprains virtually always resolve after a short course of conservative treatment or no treatment at all. By the time the Insureds in the claims identified in Exhibit "1" presented for their putative follow-up examinations -- typically weeks or months after their minor accidents -- the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents, or else their presenting problems were minimal.

137.    Even so, in the claims for the follow-up examinations identified in Exhibit "1", Titan Wellness and Nguyen made the following misrepresentations:

(i)      When billing GEICO for putative follow-up examinations using CPT code 99213 in the claims identified in Exhibit "1", Titan Wellness and Nguyen falsely represented that the Insureds presented with problems of low to moderate severity, when in fact the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any continuing problems at all at the time of the examinations.

(ii)     When billing GEICO for putative follow-up examinations using CPT code 99214 in the claims identified in Exhibit "1", Titan Wellness and Nguyen falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems were minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any continuing problems at all at the time of the examinations.

138.    For example:

(i)      On September 21, 2018, an Insured named PJ was involved in an automobile accident. The contemporaneous police report indicated that PJ's vehicle was drivable following the accident. The police report further indicated that PJ was not injured and did not complain of any pain at the scene.  In keeping with the fact that PJ was not seriously injured, PJ did not visit any hospital emergency room following the accident.  To the extent that PJ experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset,

and had resolved or were minimal within a few weeks of the accident. Even so, following purported follow-up examinations of PJ on October 15, 2018 and November 6, 2018, Titan Wellness and Nguyen billed GEICO for the follow-up examination using CPT codes 99213 and 99214 and thereby falsely represented that PJ presented with problems of low to moderate severity or moderate to high severity.

(ii)    On March 9, 2019, an Insured named WS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to WS's vehicle, that there was minor damage to the other vehicle, and that WS's vehicle was drivable following the accident.  The police report further indicated that WS was not injured and did not complain of any pain at the scene.  In keeping with the fact that WS was not seriously injured, WS did not visit any hospital emergency room following the accident. To the extent that WS experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following purported follow-up examination of WS on April 12, 2019 and May 10, 2019, Titan Wellness and Nguyen billed GEICO for the follow-up examination using CPT codes 99213 and 99214 and thereby falsely represented that WS presented with problems of low to moderate severity or moderate to high severity.

(iii)    On October 2, 2019, an Insured named PS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to the vehicles involved in the accident, and that PS's vehicle was drivable following the accident.  The police report further indicated that PS was not injured and did not complain of any pain at the scene.  In keeping with the fact that PS was not seriously injured, PS did not visit any hospital emergency room following the accident.  To the extent that PS experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following purported follow-up examinations of PS on October 31, 2019 and December 3, 2019, Titan Wellness and Nguyen billed GEICO for the follow-up examination using CPT codes 99213 and 99214 and thereby falsely represented that PS presented with problems of low to moderate severity or moderate to high severity.

(iv)    On January 2, 2020, an Insured named JS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to JS's vehicle, that there was minor damage to the other vehicle, and that JS's vehicle was drivable following the accident.  The police report further indicated that JS was not injured and did not complain of any pain at the scene.  In keeping with the fact that JS was not seriously injured, JS did not visit any hospital emergency room following the accident.  To the extent that JS experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and had resolved or were minimal within a

few weeks of the accident. Even so, following purported follow-up examinations of JS on January 15, 2020 and February 19, 2020, Titan Wellness and Nguyen billed GEICO for the follow-up examinations using CPT codes 99213 and 99214, and thereby falsely represented that JS presented with problems of low to moderate severity or moderate to high severity.

(v)    On September 9, 2020, an Insured named MA was involved in an automobile accident. The contemporaneous police report indicated that MA was not injured and did not complain of any pain at the scene.  In keeping with the fact that MA was not seriously injured, MA did not visit any hospital emergency room following the accident.  To the extent that MA experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and had resolved or were minimal within a few weeks of the accident. Even so, following purported follow-up examinations of MA on September 24, 2020 and October 16, 2020, Titan Wellness and Nguyen billed GEICO for the follow-up examination using CPT codes 99213 and 99214 and thereby falsely represented that MA presented with problems of low to moderate severity or moderate to high severity.

139.    These are only representative examples. In virtually all of the claims for follow-up examinations identified in Exhibit "1", Titan Wellness and Nguyen falsely represented that the Insureds presented with problems of low to moderate severity or moderate to high severity, when in fact the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

140.    In the claims for follow-up examinations identified in Exhibit "1", Titan Wellness, and Nguyen virtually always falsely represented that the Insureds presented with problems of either low to moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99213 or 99214, because examinations billable under CPT codes 99213 and 99214 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.** **Misrepresentations Regarding the Nature, Extent, and Results of the Follow-Up Examinations**

141. What is more, in the claims for follow-up examinations identified in Exhibit "1", neither Nguyen, nor any other chiropractor associated with Titan Wellness, ever took any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

142. Rather, following the purported follow-up examinations, Nguyen simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) referred the Insureds for even more medically unnecessary chiropractic and physical therapy services, despite the fact that the Insureds purportedly already had received extensive chiropractic and physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

143. The phony "follow-up examinations" that Titan Wellness and Nguyen purported to provide to the Insureds in the claims identified in Exhibit "1" therefore were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the examinations were prearranged to comport with the medically unnecessary treatment plan that was pre-determined for each Insured from the moment they walked into Titan Wellness' offices.

**c.** **The Fraudulent Charges for Illusory Follow-Up Examinations**

144. Additionally, Titan Wellness and Nguyen routinely billed GEICO for multiple putative follow-up examinations under CPT codes 99213 and 99214 contemporaneous with their supposed provision of chiropractic manipulation and physical therapy services.

145.    However, these supposed "examinations" were never truly separate services from the putative physical therapy and chiropractic services that were provided to the Insureds on the same dates as the supposed examinations.

146.    Pursuant to the CPT Assistant, a separate examination may be billed independent of charges for chiropractic manipulation only if the patient's condition requires an examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services.

147.    However, virtually none of the Insureds in the claims identified in Exhibit "1" required additional examination services above and beyond the usual pre- and post- manipulation assessments that they received as a component of the chiropractic manipulation they received on the same dates of service as the purported examinations.

148.    Even so, Titan Wellness and Nguyen routinely billed GEICO for putative follow-up examinations under CPT codes 99213 or 99214, despite the fact that the examinations purportedly were provided contemporaneously with putative chiropractic manipulation and physical therapy services.

149.    In keeping with the fact that the follow-up examinations were illusory, Titan Wellness and Nguyen never submitted any additional reports, notes, or substantiating documentation in connection with the phony follow-up examinations billed under CPT codes 99213 and 99214.

150.    Even so, Titan Wellness and Nguyen routinely submitted charges under CPT codes 99213 and 99214 for illusory follow-up examinations.

151.    For example:

(i)    Titan Wellness and Nguyen billed GEICO for a purported follow-up examination under CPT code 99213 that was supposedly provided to an Insured named JA

contemporaneously with chiropractic manipulation and physical therapy services on July 17, 2017. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Titan Wellness and Nguyen provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(ii)     Titan Wellness and Nguyen billed GEICO for a purported follow-up examination under CPT code 99213 that was supposedly provided to an Insured named ES contemporaneously with chiropractic manipulation and physical therapy services on February 23, 2018. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Titan Wellness and Nguyen provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(iii)    Titan Wellness and Nguyen billed GEICO for a purported follow-up examination under CPT code 99213 that was supposedly provided to an Insured named JF contemporaneously with chiropractic manipulation and physical therapy services on September 23, 2019. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Titan Wellness and Nguyen provided any patient assessments at all, they were part and parcel of the chiropractic and physical services billed to GEICO that same date.

(iv)    Titan Wellness and Nguyen billed GEICO for a purported follow-up examination under CPT code 99213 that was supposedly provided to an Insured named MD contemporaneously with chiropractic manipulation and physical therapy services on January 15, 2020. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Titan Wellness and Nguyen provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

(v)     Titan Wellness and Nguyen billed GEICO for a purported follow-up examination under CPT code 99213 that was supposedly provided to an Insured named JS contemporaneously with chiropractic manipulation and physical therapy services on February 19, 2020. This, despite the fact that: (a) no legitimate, separate follow-up examination was provided; (b) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (c) to the extent that Titan Wellness and

Nguyen provided any patient assessments at all, they were part and parcel of the chiropractic and physical therapy services billed to GEICO that same date.

152. These are only representative examples. Titan Wellness and Nguyen routinely submitted charges for illusory follow-up examinations, despite the fact that: (i) no legitimate follow-up examination services were provided; (ii) the patient's condition did not require examination above and beyond the usual pre- and post- manipulation assessment associated with chiropractic services; and (iii) a pre-manipulation patient assessment was part and parcel of the putative chiropractic manipulation services billed by Titan Wellness and Nguyen under CPT codes 98940, 98941, and 98943.

153. Titan Wellness and Nguyen submitted charges for the duplicative and illusory follow-up examinations in order to maximize the amount of fraudulent billing they could submit to insurers, including GEICO.

154. In this context, Nguyen, who at all relevant times purported to own Titan Wellness, did not, and could not have, legitimately supervised the business activities of Titan Wellness.

155. Had Nguyen actually supervised the business activities of Titan Wellness, he would have noted -- among other things -- that Titan Wellness routinely fraudulently misrepresented that the putative follow-up examinations were legitimately and lawfully performed.

156. Nguyen failed to do so, because he never actually supervised the business activities of Titan Wellness.

157. In the claims for follow-up examinations identified in Exhibit "1", Titan Wellness and Nguyen routinely fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i) the putative examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, phony "diagnoses" and treatment

recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)     the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)    Titan Wellness never was eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as it was operated in violation of the Clinic Act, Patient Brokering Act, and Anti-Kickback Statute.

**3.      The Fraudulent and Unlawful Charges for Health and Behavior Assessments at Titan Wellness**

158.    In addition to their other Fraudulent Services, Titan Wellness and Nguyen subjected many Insureds in the claims identified in Exhibit "1" to medically useless and illusory "health and behavior assessments", generally on the same dates when they purported to subject the Insureds to initial or follow-up examinations.

159.    Nguyen purported to perform virtually all of the purported "health and behavior assessments" in the claims identified in Exhibit "1", and then Nguyen and Titan Wellness billed them to GEICO under CPT codes 96150, 96151, and 96156, resulting in charges of between $40.00 and $55.00 for each assessment they purported to provide.

160.    Like Titan Wellness and Nguyen's charges for the other Fraudulent Services, the charges for the purported "health and behavior assessments" were fraudulent in that they misrepresented Titan Wellness' eligibility to collect PIP Benefits in the first instance.

161.    In fact, and as set forth herein, Titan Wellness never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

162.    The charges for the purported "health and behavior assessments" in the claims identified in Exhibit "1" also misrepresented the nature, extent, and medical necessity of the supposed assessments.

163.   The purported "health and behavior assessments" that Titan Wellness and Nguyen purported to provide Insureds were simply pre-printed, checklist questionnaires on which the Insureds were invited to report the symptoms they purportedly were experiencing, and the impact of those symptoms on their lives, and did not involve any actual assessments of the Insureds by any actual health care providers.

164.   Since a patient history and physical examination must be conducted as an element of a soft-tissue trauma patient's initial and follow-up examinations, health care providers cannot conduct and bill for an initial examination or follow-up examination, then bill separately for contemporaneously-provided "health and behavior assessments".

165.   The information gained through the use of the "health and behavior assessments" that Titan Wellness and Nguyen purported to provide was not significantly different from the information that Titan Wellness and Nguyen purported to obtain during virtually every Insured's initial examination and follow-up examinations.

166.   Under the circumstances employed by Titan Wellness and Nguyen, the "health and behavior assessments" represented purposeful and unnecessary duplication of the patient histories and examinations purportedly conducted during the Insured's initial examination and follow-up examinations. The "health and behavior assessments" were part and parcel of the Defendants' fraudulent scheme, inasmuch as the "service" was rendered pursuant to a pre-determined protocol that: (i) in no way aided in the assessment and treatment of the Insureds; and (ii) was designed solely to financially enrich the Defendants.

167.   Titan Wellness and Nguyen's use of CPT codes 96150, 96151, and 96156 to bill for the "health and behavior assessments" also constituted a deliberate misrepresentation of the nature and extent of the service that was provided.

168.     Pursuant to the CPT Assistant, the use of CPT codes 96150, 96151, and 96156 represents -- among other things -- that a health care provider actually spent at least 15 minutes of face to face time with the patient performing some sort of assessment of the psychological, behavioral, emotional, cognitive, and social factors directly affecting the patient's physical health and well-being.

169.     Though Titan Wellness and Nguyen routinely submitted billing for the "health and behavior assessments" under CPT codes 96150, 96151, and 96156, in the claims identified in Exhibit "1" no actual health care provider spent any time performing any sort of assessment of the psychological, behavioral, emotional, cognitive, and social factors directly affecting the Insureds' physical health and well-being.

170.     Indeed, the "health and behavior assessments" did not require any actual "assessments" at all, inasmuch as the "assessments" simply were questionnaires that were completed by the Insureds, and then never incorporated into the Insureds' treatment plans.

**4.      The Fraudulent and Unlawful Charges for Ligament Laxity Testing at Titan Wellness**

171.     As part of the Defendants' fraudulent scheme, Titan Wellness and Nguyen directed the majority of Insureds to receive putative "ligament laxity testing" services at Titan Wellness.

172.     Nguyen purported to perform virtually all of the ligament laxity testing services at Titan Wellness.

173.     As set forth in Exhibit "1", Titan Wellness and Nguyen then billed the purported ligament laxity testing to GEICO under CPT code 76499, resulting in a charge of $450.00 for each purported round of tests.

174.    Like Titan Wellness and Nguyen's charges for the other Fraudulent Services, the charges for the purported ligament laxity tests were fraudulent in that they misrepresented Titan Wellness' eligibility to collect PIP Benefits in the first instance.

175.    In fact, and as set forth herein, Titan Wellness never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

176.    As set forth below, the charges for the putative ligament laxity testing also were fraudulent because the ligament laxity testing services were medically unnecessary and were provided -- to the extent they were provided at all -- pursuant to the Defendants' pre-determined fraudulent treatment and billing protocol, and not to treat or otherwise benefit the Insureds who were subjected to it.

177.    In a legitimate clinical setting, the laxity -- or instability -- of spinal ligaments may be assessed and diagnosed through a routine MRI.

178.    By contrast, supposed ligament laxity testing purports to use a digital x-ray device to quantify the extent of ligament laxity in particular spinal levels.

179.    There is a dearth of quality supportive scientific evidence for the use of ligament laxity testing to diagnose soft tissue injuries in patients involved in automobile accidents.

180.    What is more, even assuming that there was some diagnostic value for the ligament laxity testing (and there was not), the ligament laxity testing was duplicative of the MRIs that the Insureds received and that, in any case, provided far more specific, sensitive, and reliable diagnostic information than the ligament laxity testing that Titan Wellness and Nguyen purported to provide.

181.    Moreover, and in keeping with the fact that the ligament laxity testing purportedly provided at Titan Wellness was medically unnecessary, whatever supposed quantitative findings the ligament laxity testing generated were never legitimately incorporated into any of the Insureds' courses of treatment at Titan Wellness.

182.    Instead, following the putative ligament laxity testing, Titan Wellness and Nguyen routinely directed the Insureds identified in Exhibit "1" to continue to receive a virtually identical course of treatment as had been recommended for that Insured prior to the supposed ligament laxity testing.

183.    For example:

(i)    On May 12, 2017, an Insured named GA was involved in an automobile accident. Thereafter, on May 18, 2017, GA presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the putative examination, Titan Wellness and Nguyen provided GA with substantially the same soft tissue injury "diagnoses" they provided to virtually every Insured, and recommended that GA begin substantially the same course of medically unnecessary "treatment" they recommended to virtually every other Insured. Then, on May 24, 2018, Titan Wellness and Nguyen purported to provide GA with a ligament laxity test at Titan Wellness. However -- and in keeping with the fact that the ligament laxity test was medically unnecessary -- the "results" of the ligament laxity testing were never incorporated into GA's supposed "treatment" plan, and GA thereafter received substantially the same treatment as had been recommended to GA prior to the ligament laxity testing being provided.

(ii)    On March 15, 2018, an Insured named KI was involved in an automobile accident. Thereafter, on March 23, 2018, KI presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the putative examination, Titan Wellness and Nguyen provided KI with substantially the same soft tissue injury "diagnoses" they provided to virtually every Insured, and recommended that KI begin substantially the same course of medically unnecessary "treatment" they recommended to virtually every other Insured. Then, on May 9, 2018, Titan Wellness and Nguyen purported to provide KI with a ligament laxity test at Titan Wellness. However -- and in keeping with the fact that the ligament laxity test was medically unnecessary -- the "results" of the ligament laxity testing were never incorporated into KI's supposed "treatment" plan, and KI thereafter received substantially the same treatment as had been recommended to KI prior to the ligament laxity testing being provided.

(iii)   On April 21, 2019, an Insured named JB was involved in an automobile accident. Thereafter, on April 26, 2019, JB presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the putative examination, Titan Wellness and Nguyen provided JB with substantially the same soft tissue injury "diagnoses" they provided to virtually every Insured, and recommended that JB begin substantially the same course of medically unnecessary "treatment" they recommended to virtually every other Insured. Then, on April 30, 2019, Titan Wellness and Nguyen purported to provide JB with a ligament laxity test at Titan Wellness. However -- and in keeping with the fact that the ligament laxity test was medically unnecessary -- the "results" of the ligament laxity testing were never incorporated into JB's supposed "treatment" plan, and JB thereafter received substantially the same treatment as had been recommended to JB prior to the ligament laxity testing being provided.

(iv)   On January 2, 2020, an Insured named MD was involved in an automobile accident. Thereafter, on January 3, 2020, MD presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the putative examination, Titan Wellness and Nguyen provided MD with substantially the same soft tissue injury "diagnoses" they provided to virtually every Insured, and recommended that MD begin substantially the same course of medically unnecessary "treatment" they recommended to virtually every other Insured. Then, on January 7, 2018, Titan Wellness and Nguyen purported to provide MD with a ligament laxity test at Titan Wellness. However -- and in keeping with the fact that the ligament laxity test was medically unnecessary -- the "results" of the ligament laxity testing were never incorporated into MD's supposed "treatment" plan, and MD thereafter received substantially the same treatment as had been recommended to MD prior to the ligament laxity testing being provided.

(v)   On February 4, 2021, an Insured named MF was involved in an automobile accident. Thereafter, on February 23, 2021, MF presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the putative examination, Titan Wellness and Nguyen provided MF with substantially the same soft tissue injury "diagnoses" they provided to virtually every Insured, and recommended that MF begin substantially the same course of medically unnecessary "treatment" they recommended to virtually every other Insured. Then, on March 9, 2021, Titan Wellness and Nguyen purported to provide MF with a ligament laxity test at Titan Wellness. However -- and in keeping with the fact that the ligament laxity test was medically unnecessary -- the "results" of the ligament laxity testing were never incorporated into MF's supposed "treatment" plan, and MF thereafter received substantially the same treatment as had been recommended to MF prior to the ligament laxity testing being provided.

184.     These are only representative examples. In the claims identified in Exhibit "1", Titan Wellness and Nguyen routinely misrepresented the medical necessity of the putative ligament laxity testing.

185.     In fact, the ligament laxity testing was never medically necessary, as Titan Wellness and Nguyen never incorporated the results of the putative "tests" into the diagnosis or treatment of the Insureds who presented to Titan Wellness.

**5.     The Fraudulent and Unlawful Charges for Physical Therapy and Chiropractic Treatment at Titan Wellness**

186.     In addition to their other Fraudulent Services, Titan Wellness and Nguyen virtually always purported to subject each of the Insureds in the claims identified in Exhibit "1" to medically unnecessary physical therapy and chiropractic treatment and billed GEICO for the purported physical therapy and/or chiropractic services under CPT codes 97010, 97012, 97014, 97016, 97035, 97110, 97112, 97140, 98941, and 98943.

187.     Nguyen purported to perform or directly supervise virtually all of the purported physical therapy and chiropractic services in the claims identified in Exhibit "1".

188.     Like Titan Wellness and Nguyen's charges for the other Fraudulent Services, the charges for the purported physical therapy and chiropractic services were fraudulent in that they misrepresented Titan Wellness' eligibility to collect PIP Benefits in the first instance.

189.     In fact, and as set forth herein, Titan Wellness never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

190.     The charges for the physical therapy and chiropractic services also were fraudulent in that they misrepresented the nature and medical necessity of the services.

191.     In a legitimate clinical setting, each individual patient's physical therapy and/or chiropractic treatment schedule, and the specific treatment modalities that will be used, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

192.     In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's treatment progress, as assessed during each patient's follow-up examinations and on an ongoing basis as they receive the physical therapy.

193.     In keeping with the fact that the purported physical therapy and chiropractic services that were billed through Titan Wellness to GEICO were not medically necessary, Titan Wellness and Nguyen did not tailor the chiropractic and physical therapy services they purported to provide to each Insured's individual circumstances and presentment.

194.     There are a large number of individual types of physical therapy and chiropractic services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

195.     However, Titan Wellness and Nguyen virtually always purported to provide the same handful of chiropractic and physical therapy "treatments" to virtually every Insured in the claims identified in Exhibit "1", on substantially the same schedule, without regard for the Insureds' individual circumstances.

196.     Specifically, Titan Wellness and Nguyen purported to provide the majority of Insureds in the claims identified in Exhibits "1" with one-to-two months of chiropractic and physical therapy services, virtually always consisting of chiropractic adjustments, hot/cold pack application, mechanical traction, vasopneumatic devices, ultrasound, therapeutic exercises, neuromuscular reeducation, manual therapy, therapeutic activities, and electric stimulation. This,

despite the fact that the Insureds were differently situated, and could not possibly all have required a substantially-similar course of physical therapy treatment.

**6.      The Fraudulent and Unlawful Charges for HME at Titan Wellness**

197.     As part of their fraudulent scheme, at the conclusion of their initial examinations, Titan Wellness and Nguyen purported to provide many Insureds with HME.

198.     In particular, and as set forth in Exhibit "1", Titan Wellness and Nguyen prescribed many Insureds with HME -- namely, lumbar-sacral orthotics ("LSO") -- and then billed GEICO for the LSOs under HCPCS code L0637, typically resulting in a charge of $1,932.00 for each LSO they supposedly provided.

199.     Like Titan Wellness and Nguyen's charges for the other Fraudulent Services, the charges for the LSOs were fraudulent in that they misrepresented Titan Wellness' eligibility to collect PIP Benefits in the first instance.

200.     In fact, and as set forth herein, Titan Wellness never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

201.     The charges for the LSOs also misrepresented Titan Wellness' eligibility to bill for HME, considering that Titan Wellness never complied with the Florida HME licensure requirements.

202.     Moreover, Titan Wellness and Nguyen's charges for the LSOs identified in Exhibit "1" also were fraudulent in that they misrepresented the medical necessity of the LSOs.

203.     An LSO is a rigid, custom-fitted, lower-back brace designed to restrict the movement of the patient's torso and support the patient's lumbar spine. Because of its rigidity and

required placement on a patient's lower back, an LSO must be custom-fitted in order for it to be properly utilized by the patient.

204.    In a legitimate clinical setting, an LSO can be used for patients who exhibit spinal instability or for patients who have recently undergone spinal surgery.

205.    Because LSOs are designed to limit a patient's lumbar spine range of motion, the use of an LSO is inconsistent with treatment designed to restore and increase range of motion and functionality of the lumbar spine.

206.    Along similar lines, use of an LSO is counterproductive to the goals of physical therapy and chiropractic treatment modalities, which seek to restore movement and functionality to the lumbar spine.

207.    In fact, the medically unnecessary use of an LSO -- and resulting immobilization of the lumbar spine -- may put the patient at considerable risk of weakening muscles or even muscle atrophy of muscles in the lower back.

208.    Moreover, in a legitimate clinical setting, an LSO should not be prescribed to a patient before that patient failed a legitimate course of conservative treatment.

209.    Virtually none of the Insureds in the claims identified in Exhibit "1" suffered from spinal instability. In fact, virtually none of the Insureds in the claims identified in Exhibit "1" suffered any serious injuries at all, much less health problems requiring spinal surgery and subsequent immobilization of their spine.

210.    None of the Insureds in the claims identified in Exhibit "1" had attempted and failed a legitimate course of conservative treatment prior to their receipt of an LSO from Titan Wellness and Nguyen.

211.    Even so, following their fraudulent initial examinations, boilerplate examination reports, and duplicative and medically-impossible diagnoses, Titan Wellness and Nguyen purported to prescribe many Insureds with an LSO, despite that fact that:

(i)     virtually none of the Insureds suffered from spinal instability or were recovering from spinal surgery;

(ii)    the Insureds had not yet failed any legitimate course of conservative treatment and, in fact, were prescribed the LSO within days -- and, in some instances, the very same day -- of their minor accidents;

(iii)   neither Nguyen, nor any other individual associated with Titan Wellness, ever legitimately measured or fitted the device for the Insureds; and

(iv)    the Insureds were supposedly receiving physical therapy and chiropractic treatment at Titan Wellness, supposedly for improving the range of motion and functionality of, among other things, the Insureds' lumbar spines.

212.    For example:

(i)     On December 17, 2017, an Insured named JR was involved in an automobile accident. On December 26, 2017, JR presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the purported initial examination, Titan Wellness and Nguyen prescribed JR with a medically unnecessary LSO, despite the fact that JR: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (b) had not yet failed a legitimate course of conservative treatment, and, (c) in fact, was concomitantly referred by Nguyen for physical therapy and chiropractic treatment at Titan Wellness, the putative purpose of which was to increase, rather than decrease, JR's range of motion. Titan Wellness and Nguyen then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,932.00 for the medically unnecessary LSO.

(ii)    On November 28, 2018, an Insured named MB was involved in an automobile accident. On December 11, 2018, MB presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the purported initial examination, Titan Wellness and Nguyen prescribed MB with a medically unnecessary LSO, despite the fact that MB: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (b) had not yet failed a legitimate course of conservative treatment, and, (c) in fact, was concomitantly referred by Nguyen for physical therapy and chiropractic treatment at Titan Wellness, the putative purpose of which was to increase, rather than decrease, MB's range of motion. Titan Wellness and Nguyen then submitted a bill

to GEICO under HCPCS code L0637, seeking reimbursement of $1,932.00 for the medically unnecessary LSO.

(iii)     On August 28, 2019, an Insured named JF was involved in an automobile accident. On September 4, 2019, JF presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the purported initial examination, Titan Wellness and Nguyen prescribed JF with a medically unnecessary LSO, despite the fact that JF: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (b) had not yet failed a legitimate course of conservative treatment, and, (c) in fact, was concomitantly referred by Nguyen for physical therapy and chiropractic treatment at Titan Wellness, the putative purpose of which was to increase, rather than decrease, JF's range of motion. Titan Wellness and Nguyen then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,932.00 for the medically unnecessary LSO.

(iv)     On January 2, 2020, an Insured named JS was involved in an automobile accident. The next day, January 3, 2020, JS presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the purported initial examination, Titan Wellness and Nguyen prescribed JS with a medically unnecessary LSO, despite the fact that JS: (a) did not suffer from spinal instability and was not recovering from spinal surgery; (b) had not yet failed a legitimate course of conservative treatment, and, (c) in fact, was concomitantly referred by Nguyen for physical therapy and chiropractic treatment at Titan Wellness, the putative purpose of which was to increase, rather than decrease JS's range of motion. Titan Wellness and Nguyen then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,932.00 for the medically unnecessary LSO.

(v)      On January 24, 2021, an Insured named MC was involved in an automobile accident. On January 27, 2021, MC presented to Titan Wellness for an initial examination by Nguyen. At the conclusion of the purported initial examination, Titan Wellness and Nguyen prescribed MC with a medically unnecessary LSO, despite the fact that MC: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (b) had not yet failed a legitimate course of conservative treatment, and, (c) in fact, was concomitantly referred by Nguyen for physical therapy and chiropractic treatment at Titan Wellness, the putative purpose of which was to increase, rather than decrease, MC's range of motion. Titan Wellness and Nguyen then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,932.00 for the medically unnecessary LSO.

213.    These are only representative examples. In virtually all of the claims for LSOs identified in Exhibit "1", Titan Wellness and Nguyen falsely represented that the prescribed LSOs were medically necessary, when in fact they were not.

7. **The Fraudulent and Unlawful Charges for Initial Examinations at Stein P.A.**

214.    After receiving a patient referral from Titan Wellness and Nguyen pursuant to the Defendants' unlawful referral scheme, Stein and Stein P.A. purported to provide each of the Insureds in the claims identified in Exhibit "2" with a purported initial examination.

215.    Virtually all of the initial examinations in the claims identified in Exhibit "2" purportedly were performed either by Stein, or by Sachs under Stein's supposed supervision.

216.    As set forth in Exhibit "2", Stein P.A. and Stein then billed the initial examinations to GEICO, or caused them to be billed to GEICO, under CPT codes 99204 or 99205, typically resulting in a charge of between $350.00 and $450.00 for each initial examination that they purported to provide.

217.    Pursuant to the CPT Assistant, at all relevant times:

(i)     the use of CPT code for 99204 to bill for an initial patient examination represented – among other things – that: (a) the patient presented with problems of moderate to high severity; (b) the physician who conducted the examination spent at least 45 minutes of face-to-face time with the patient or the patient's family during the examination; (c) the physician who performed the examination conducted a "comprehensive" physical examination; and (d) the physician who performed the examination engaged in "moderate complexity" medical decision-making.

(ii)    the use of CPT code for 99205 to bill for an initial patient examination represented – among other things – that: (a) the patient presented with problems of moderate to high severity; (b) the physician who conducted the examination spent at least 60 minutes of face-to-face time with the patient or the patient's family during the examination; (c) the physician who performed the examination conducted a "comprehensive" physical examination; and (d) the physician who performed the examination engaged in "high complexity" medical decision-making.

218.    In the claims for initial examinations identified in Exhibit "2", the charges for the initial examinations were fraudulent in that they misrepresented Stein P.A.'s eligibility to collect PIP Benefits in the first instance.

219.     In fact, and as set forth herein, Stein P.A. never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

220.     As set forth below, the charges for the initial examinations identified in Exhibit "2" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

a.     **Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

221.     To the extent that the Insureds in the claims identified in Exhibit "2" had any presenting problems at all as the result of their typically-minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

222.     Even so, when billing GEICO for initial examinations using CPT code 99204 or 99205 in the claims identified in Exhibit "2", Stein P.A. and Stein falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems were low or minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all at the time of the examinations.

223.     For example:

(i)     On September 21, 2018, an Insured named PJ was involved in an automobile accident. The contemporaneous police report indicated that PJ's vehicle was drivable following the accident. The police report further indicated that PJ was not injured and did not complain of any pain at the scene.  In keeping with the fact that PJ was not seriously injured, PJ did not visit any hospital emergency room following the accident.  To the extent that PJ experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of PJ on September 28, 2018, Stein P.A. and Stein billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(ii)     On January 21, 2019, an Insured named MT was involved in an automobile accident. The contemporaneous police report indicated that MT was not injured and

did not complain of any pain at the scene.  In keeping with the fact that MT was not seriously injured, MT did not visit any hospital emergency room following the accident.  To the extent that MT experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of MT on February 28, 2019, Stein P.A. Stein, and Sachs billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(iii)    On August 28, 2019, an Insured named JF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to JF's vehicle, that there was minor damage to the other vehicle, and that JF's vehicle was drivable following the accident.  The police report further indicated that JF was not injured and did not complain of any pain at the scene.  In keeping with the fact that JF was not seriously injured, JF did not visit any hospital emergency room following the accident.  To the extent that JF experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of JF by Sachs on September 10, 2019, Stein P.A. Stein, and Sachs billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(iv)    On January 2, 2020, an Insured named JS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to the vehicles involved in the accident, and that JS's vehicle was drivable following the accident.  The police report further indicated that JS was not injured and did not complain of any pain at the scene.  In keeping with the fact that JS was not seriously injured, JS did not visit any hospital emergency room following the accident.  To the extent that JS experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of JS by Sachs on January 9, 2020, Stein P.A. Stein, and Sachs billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

(v)    On September 9, 2020, an Insured named MA was involved in an automobile accident. The contemporaneous police report indicated that MA was not injured and did not complain of any pain at the scene.  In keeping with the fact that MA was not seriously injured, MA did not visit any hospital emergency room following the accident.  To the extent that MA experienced any health problems at all as a result of the accident, they were of low or minimal severity.  Even so, following a purported initial examination of MA by Sachs on September 16, 2020, Stein P.A., Stein, and Sachs billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that the initial examination involved presenting problems of moderate to high severity.

224. These are only representative examples. In the claims for initial examinations identified in Exhibit "2", Stein P.A. and Stein virtually always falsely represented that the Insureds presented with problems of moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99204 and 99205, because examinations billable under CPT codes 99204 and 99205 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity; and (ii) create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.** **Misrepresentations Regarding the Extent of Medical Decision-Making**

225. Moreover, in the claims for initial examinations identified in Exhibit "2", when Stein P.A. and Stein billed GEICO for the purported examinations using CPT code 99204, they falsely represented that the physicians or health care providers who purported to conduct the examinations -- namely Stein and Sachs -- engaged in some legitimate, moderate complexity medical decision-making in connection with the examinations.

226. When Stein P.A. and Stein billed GEICO for the purported initial examinations using CPT code 99205, they falsely represented that the physicians or health care providers who purported to conduct the examinations -- i.e., Stein and Sachs -- engaged in some legitimate, high complexity medical decision-making in connection with the examinations.

227. In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

228. Rather, in the claims for initial examinations identified in Exhibit "2": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity -- much less mortality -- from the Insureds' minor soft-tissue injury

complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) Stein P.A., Stein, and Sachs did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and provided a substantially similar, pre-determined sprain/strain or similar soft tissue injury "diagnoses" for every Insured, regardless of their true individual circumstances or presentation.

229.   For example:

(i)   On January 21, 2019, an Insured named MT was involved in an automobile accident. The contemporaneous police report indicated that MT was not injured and did not complain of any pain at the scene.  In keeping with the fact that MT was not seriously injured, MT did not visit any hospital emergency room following the accident.  To the extent that MT experienced any health problems at all as a result of the accident, they were of low or minimal severity. On February 28, 2019, Sachs purported to conduct an initial examination of MT at Stein P.A. To the extent that Sachs performed the examination in the first instance, Sachs did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Sachs did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Sachs provided MT with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither MT's presenting problems, nor the treatment plan provided to MT by Stein P.A., Stein, and Sachs presented any risk of significant complications, morbidity, or mortality. To the contrary, MT did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Stein P.A., Stein, and Sachs consisted of medically unnecessary chiropractic services, as well as pain management injections, none of which – if properly performed – posed the least bit of risk to MT did. Even so, Stein P.A. and Stein billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that Sachs engaged in some legitimate, high complexity medical decision-making during the purported examination.

(ii)   On August 28, 2019, an Insured named JF was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to JF's vehicle, that there was minor damage to the other vehicle, and that JF's vehicle was drivable following the accident.  The police report further indicated that JF was not injured and did not complain of any pain at the scene.  In keeping with the fact that JF was not seriously injured, JF did not visit any hospital emergency room following the accident.  To the extent that JF experienced any health problems at all as the result of the accident, they were of low or minimal severity. On September 10, 2019, Stein purported to conduct an initial examination of JF at Stein P.A. To the extent that Stein performed the

examination in the first instance, Stein did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Stein did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Stein provided JF with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JF's presenting problems, nor the treatment plan provided to JF by Stein P.A. and Stein presented any risk of significant complications, morbidity, or mortality. To the contrary, JF did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Stein P.A. and Stein consisted of medically unnecessary chiropractic services, which did not pose the least bit of risk to JF. Even so, Stein P.A. and Stein billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that Stein engaged in some legitimate, high complexity medical decision-making during the purported examination.

(iii)    On January 2, 2020, an Insured named JS was involved in an automobile accident. The contemporaneous police report indicated that the accident was a rear-end collision, that there was minor damage to the vehicles involved in the accident, and that JS's vehicle was drivable following the accident.  The police report further indicated that JS was not injured and did not complain of any pain at the scene.  In keeping with the fact that JS was not seriously injured, JS did not visit any hospital emergency room following the accident.  To the extent that JS experienced any health problems at all as a result of the accident, they were of low or minimal severity. On January 9, 2020, Sachs purported to conduct an initial examination of JS at Stein P.A. To the extent that Stein performed the examination in the first instance, Sachs did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Stein did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Sachs provided JS with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither JS's presenting problems, nor the treatment plan provided to JS by Stein P.A., Stein, and Sachs presented any risk of significant complications, morbidity, or mortality. To the contrary, JS did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Stein P.A., Stein, and Sachs consisted of medically unnecessary chiropractic services, which did not pose the least bit of risk to JS. Even so, Stein P.A. and Stein billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that Sachs engaged in some legitimate, high complexity medical decision-making during the purported examination.

(iv)    On September 9, 2020, an Insured named MA was involved in an automobile accident. The contemporaneous police report indicated that MA was not injured and did not complain of any pain at the scene.  In keeping with the fact that MA was not seriously injured, MA did not visit any hospital emergency room following

the accident. To the extent that MA experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 16, 2020, Sachs purported to conduct an initial examination of MA at Stein P.A. To the extent that Sachs performed the examination in the first instance, Sachs did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Sachs did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Sachs provided MA with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither MA's presenting problems, nor the treatment plan provided to MA by Stein P.A., Stein, and Sachs presented any risk of significant complications, morbidity, or mortality. To the contrary, MA did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Stein P.A., Stein, and Sachs consisted of medically unnecessary chiropractic and physical therapy services, as well as pain management injections, none of which –if properly performed – posed the least bit of risk to MA. Even so, Stein P.A., Stein, and Sachs billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that Sachs engaged in some legitimate, high complexity medical decision-making during the purported examination.

(v)     On January 28, 2021, an Insured named JP was involved in an automobile accident. The contemporaneous police report indicated that JP was not injured and did not complain of any pain at the scene. In keeping with the fact that JP was not seriously injured, JP did not visit any hospital emergency room following the accident. To the extent that JP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On February 4, 2021, Stein purported to conduct an initial examination of JP at Stein P.A. To the extent that Stein performed the examination in the first instance, Stein did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Stein did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Stein provided JP with the same, phony, list of objectively unverifiable soft tissue injury "diagnoses" that he provided to virtually every other Insured. Furthermore, neither JP's presenting problems, nor the treatment plan provided to JP by Stein P.A. and Stein presented any risk of significant complications, morbidity, or mortality. To the contrary, JP did not need any significant treatment at all as a result of the accident, and the treatment plan provided by Stein P.A. and Stein consisted of medically unnecessary chiropractic and physical therapy services, none of which –if properly performed – posed the least bit of risk to JP. Even so, Stein P.A. and Stein billed GEICO for the initial examination using CPT code 99205, and thereby falsely represented that Stein engaged in some legitimate, high complexity medical decision-making during the purported examination.

230.     In keeping with the fact that these putative "diagnoses" were pre-determined and phony, Stein P.A. and Stein frequently issued substantially identical, phony "diagnoses", on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

For example:

(i)     On December 29, 2016, <u>three</u> Insureds – JS, RV, and XV – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at Stein P.A. for initial examinations on the <u>exact same date</u>, January 9, 2017. JS, RV, and XV were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that JS, RV, and XV suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Stein P.A. and Stein provided JS, RV, and XV with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to all three of them.

(ii)    On September 11, 2018, two Insureds – NG and MO – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Stein P.A. for initial examinations on the <u>exact same date</u>, September 18, 2019. NG and MO were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that NG and MO suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Stein P.A. and Stein provided NG and MO with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iii)   On April 20, 2019, two Insureds – KF and TF – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Stein P.A. for initial examinations on the <u>exact same date</u>, April 25, 2019. KF and TF were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that KF and TF suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Stein P.A. and Stein provided KF and TF with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(iv)    On February 14, 2021 two Insureds – GC and LC – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Stein P.A. for initial examinations on the <u>exact same date</u>, March 8, 2021. GC and LC were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that GC and LC suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Stein P.A. and Stein provided GC and LC with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

(v)    On March 27, 2021, two Insureds – BB and EB – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at Stein P.A. for initial examinations on the <u>exact same date</u>, April 23, 2021. BB and EB were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the impact from different positions in the vehicle. To the extent that BB and EB suffered any injuries at all in their accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Stein P.A. and Stein provided BB and EB with substantially identical, phony soft tissue injury "diagnoses", and recommended a substantially identical course of medically unnecessary treatment to both of them.

231.    These are only representative examples. In the claims for initial examinations that are identified in Exhibit "2", Stein P.A. and Stein frequently issued substantially identical "diagnoses", on or about the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that the Insureds were differently situated and, in any case, did not require the treatment.

232.    Stein P.A. and Stein routinely inserted these false "diagnoses" in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

233.    In the claims for initial examinations identified in Exhibit "2", Stein P.A. and Stein routinely falsely represented that the putative examinations involved legitimate, moderate or high

complexity medical decision making in order to create a false basis to bill for the initial examinations under CPT codes 99204 and 99205, because examinations billable under CPT codes 99204 and 99205 are reimbursable at a higher rate than examinations or examinations that do not require any complex medical decision-making at all.

234.    In this context, Stein -- who at all relevant times purported to own Stein P.A. -- did not, and could not have, legitimately supervised the business activities of Stein P.A.

235.    Had Stein actually supervised the business activities of Stein P.A., he would have noted -- among other things -- that Stein P.A.'s billing routinely fraudulently misrepresented that the putative initial examinations were legitimately and lawfully performed.

236.    Stein failed to do so, because he never actually supervised the business activities of Stein P.A.

237.    In the claims for initial examinations identified in Exhibit "1", Stein P.A. and Stein routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)   Stein P.A. never was eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as it was operated in violation of the Clinic Act, Patient Brokering Act, and Anti-Kickback Statute.

c.      **The Fraudulent and Unbundled Charges for Muscle Strength Testing, "Self Care Training", and "Community/Work Reintegration Training"**

238.    To maximize their fraudulent charges for their phony initial examinations, in the claims identified in Exhibit "2" Stein and Stein P.A. frequently submitted separate charges for medically useless and illusory muscle strength testing under CPT codes 95851 and 97750, "self care training" under CPT code 97535, and "community/work reintegration training" under CPT code 97537, together with their examination charges under CPT codes 99204 or 99205.

239.    Either Stein, or Sachs working under Stein's purported direct supervision, purported to perform virtually all of the purported muscle strength testing, self-care training, and community/work reintegration training in the claims identified in Exhibit "2".

240.    Like Stein and Stein P.A.'s charges for the other Fraudulent Services, the charges for the purported muscle strength testing, self-care training, and community/work reintegration training were fraudulent in that they misrepresented Stein P.A.'s eligibility to collect PIP Benefits in the first instance.

241.    In fact, and as set forth herein, Stein P.A. never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

242.    The charges for the purported muscle strength testing, self-care training, and community/work reintegration training in the claims identified in Exhibit "1" also misrepresented the nature, extent, and medical necessity of the supposed services.

243.    Physical examinations performed on patients with soft-tissue trauma necessarily require muscle strength tests, inasmuch as these tests provide a starting point for injury assessment and treatment planning. Unless a physician knows the extent of a given patient's muscle strength

impairment, there is no way to properly diagnose or treat the patient's injuries. Evaluation of muscle strength is an essential component of the "hands-on" examination of a trauma patient.

244.    Since muscle strength tests must be conducted as an element of a soft-tissue trauma patient's examination, muscle strength tests are to be reimbursed as an element of the examination.

245.    In other words, healthcare providers cannot conduct and bill for an initial examination or follow-up examination, then bill separately for contemporaneously-provided muscle strength tests.

246.    To the extent that Stein P.A. and Stein actually provided patent examinations in the first instance, Stein P.A., Stein, and/or Sachs purported to conduct muscle strength tests on Insureds during the examinations.

247.    Despite the fact that their charges for the muscle strength tests were part and parcel of the charges that were submitted through Stein P.A. for purported initial examinations under CPT codes 99204 and 99205, Stein P.A. and Stein routinely submitted separate charges for purported muscle strength testing under CPT codes 95831 and 97750, and thereby falsely represented that they had performed some muscle strength testing that constituted a separate service from the initial examinations that they contemporaneously purported to provide.

248.    Stein P.A. and Stein's charges for purported self-care training and community/work reintegration training also falsely represented that they had provided at least 15 minutes of separately-identifiable training to the Insureds regarding "self-care" or "community/work reintegration", beyond the initial examination service that was contemporaneously billed under CPT code 99205.

### d.     Misrepresentations of the Treatment Location for the Purported Examinations

249.     To the extent that Stein and Stein P.A. actually provided any of the examinations identified in Exhibit "2" at all, they provided the examinations at Titan Wellness' offices in Fort Myers, Florida, pursuant to the Defendants' unlawful kickback and referral scheme.

250.     The Defendants were concerned that, if Stein and Stein P.A. accurately listed Titan Wellness' offices as the treatment location for the examinations, it would draw attention to their unlawful referral scheme.

251.     Accordingly, in each of the claims for initial examinations that are identified in Exhibit "2", Stein P.A. and Stein falsely represented that the examinations had been provided at Stein P.A.'s offices, rather than at Titan Wellness' offices.

252.     Stein and Stein P.A.'s false representations that the examinations had been performed at Stein P.A.'s offices violated the No-Fault Laws, which require that PIP bills accurately set forth the locations where the underlying services were performed.

### 8.     The Fraudulently Unbundled Charges for Range of Motion and Muscle Strength Testing at ISO-Diagnostics

253.     After receiving a patient referral from Stein and Stein P.A. pursuant to the Defendants' unlawful referral scheme, ISO-Diagnostics, Baruch, and Stein purported to provide the Insureds in the claims identified in Exhibit "3" with purported range of motion testing and additional muscle strength testing.

254.     Virtually all of the purported range of motion testing and additional muscle strength testing in the claims identified in Exhibit "3" supposedly were performed by Poncev at Titan Wellness' offices, under Stein's supposed supervision.

255.    As set forth in Exhibit "3", ISO-Diagnostics, Baruch, and Stein then billed the range of motion and muscle strength tests to GEICO, or caused them to be billed to GEICO, under CPT codes 95831, 95832, and 95851, typically resulting in a hundreds of dollars in charges per Insured.

256.    The charges for the purported range of motion and muscle strength tests were fraudulent in that they misrepresented ISO-Diagnostics' eligibility to collect PIP Benefits in the first instance.

257.    In fact, and as set forth herein, ISO-Diagnostics never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements set forth in the Clinic Act, as well as the Patient Brokering Act and Anti-Kickback Statute.

258.    The charges for the purported range of motion and muscle strength tests also were fraudulent in that they misrepresented the nature and medical necessity of the tests.

259.    Physical examinations performed on patients with soft-tissue trauma necessarily require range of motion and muscle strength tests, inasmuch as these tests provide a starting point for injury assessment and treatment planning. Unless a physician knows the extent of a given patient's joint or muscle strength impairment, there is no way to properly diagnose or treat the patient's injuries. Evaluation of range of motion and muscle strength is an essential component of the "hands-on" examination of a trauma patient.

260.    All of the Insureds in the claims identified in Exhibit "3" supposedly received range of motion and muscle strength testing during each of the initial and follow-up examinations provided by Titan Wellness and Nguyen, and during each of the initial examinations provided by Stein P.A. and Stein.

261.    The charges for the range of motion and muscle strength tests were part and parcel of the charges that were submitted through Titan Wellness for purported examinations under CPT

codes 99203, 99213, and 99214, and through Stein P.A. for purported examinations under CPT codes 99204 and 99205.

262.     Despite the fact that virtually every Insured already purportedly had undergone range of motion and muscle strength testing during their contemporaneously-provided initial examinations and/or follow-up examinations, Stein P.A. and Stein nonetheless referred the Insureds in the claims identified in Exhibit "3" to ISO-Diagnostics for medically useless, range of motion and muscle strength testing, pursuant to the Defendants' unlawful referral scheme.

263.     Not only did ISO-Diagnostics, Baruch, and Stein deliberately purport to provide duplicative, medically unnecessary range of motion tests, they also unbundled their billing for range of motion and muscle strength testing, which maximized the fraudulent charges that they could submit to GEICO.

264.     Pursuant to the CPT Assistant, when range of motion testing and muscle strength testing are performed on the same date of service, all of the testing should be reported and billed using CPT code 97750.

265.     CPT code 97750, described as "Physical performance test or measurement (e.g., musculoskeletal, functional capacity), with written report, each 15 minutes" (the "Physical Performance Test"), identifies a number of tests and measurements of physical performance of a select area or number of areas, including range of motion and muscle strength testing.

266.     CPT code 97750 is a "time-based" code that that allows for a separate charge for every 15 minutes of testing that is performed.

267.     Thus, if a health care provider performed 15 minutes of range of motion and muscle testing, it would be permitted a single charge under CPT code 97750. If the provider performed 30

minutes of range of motion and muscle testing, it would be permitted to submit two charges under CPT code 97750, and so forth.

268.    In the claims for range of motion and muscle strength testing that are identified in Exhibit "3", ISO-Diagnostics, Baruch, and Stein routinely purported to provide the range of motion and muscle strength testing to individual Insureds on the same dates of service.

269.    To the extent that ISO-Diagnostics, Baruch, and Stein actually provided the range of motion and muscle tests to Insureds in the first instance, the range of motion and muscle tests -- together -- virtually never took more than 15 minutes to perform. Thus, even if the range of motion and muscle tests that ISO-Diagnostics, Baruch, and Stein purported to provide were medically necessary, and performed in the first instance, ISO-Diagnostics, Baruch, and Stein would be limited to a single, time-based charge under CPT code 97750 for each date of service on which they performed range of motion and muscle tests on an Insured.

270.    However, in order to maximize their fraudulent billing for the range of motion and muscle tests, ISO-Diagnostics, Baruch, and Stein routinely unbundled what should have been -- at most -- a single charge under CPT code 97750 for both computerized range of motion and muscle testing into: (i) multiple charge under CPT codes 95831 and 95832 (for the muscle tests); and (ii) multiple charges under CPT code 95851 (for the range of motion tests).

271.    By unbundling what should -- at most -- have been a single charge under CPT code 97750 into multiple charges under CPT codes 95851, 95831, and 95832, ISO-Diagnostics, Baruch, and Stein routinely further inflated the fraudulent range of motion and muscle strength tests charges that they submitted to GEICO.

### III.    The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

272.    To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of bills and treatment reports through Titan Wellness, ISO-Diagnostics, and Stein P.A. to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

273.    The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that Titan Wellness, ISO-Diagnostics, and Stein P.A. were in compliance with Florida law and therefore were eligible to collect PIP Benefits in the first instance. In fact, Titan Wellness, ISO-Diagnostics, and Stein P.A. were never eligible for collect PIP Benefits in the first instance because: (a) Titan Wellness, ISO-Diagnostics, and Stein P.A. operated in violation of the Clinic Act; (b) Titan Wellness, ISO-Diagnostics, and Stein P.A. operated in violation of the Patient Brokering Act and the Anti-Kickback Statute; and (c) Titan Wellness operated in violation of the HME Licensing Laws.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement, because they were provided -- to the extent that they were provided at all -- pursuant to the Defendants' unlawful referral scheme, and were medically unnecessary.

(iii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)    The HCFA-1500 forms reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

**IV.**     **The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

274.     The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO. Even so, the Defendants knowingly misrepresented and concealed facts related to Titan Wellness, ISO-Diagnostics, and Stein P.A. in an effort to prevent discovery that the Defendants operated in pervasive violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and to prevent discovery that the Fraudulent Services were medically unnecessary and, in many cases, illusory.

275.     GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $2,800,000.00.

276.     GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it commenced this action.

**FIRST CAUSE OF ACTION**
**Against Titan Wellness**
**(Declaratory Judgment -- 28 U.S.C. §§ 2201 and 2202)**

277.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

278.     There is an actual case in controversy between GEICO and Titan Wellness regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

279.    Titan Wellness has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of the Clinic Act, HME Licensing laws, Patient Brokering Act, and the Anti-Kickback statute.

280.    Titan Wellness has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

281.    Titan Wellness has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

282.    Titan Wellness has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

283.    Titan Wellness has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

284.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Titan Wellness has no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against Nguyen**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

285.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

286. Titan Wellness is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

287. Nguyen knowingly has conducted and/or participated, directly or indirectly, in the conduct of Titan Wellness's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Titan Wellness was not eligible to receive under the No-Fault Law because: (i) Titan Wellness unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the HME Licensing Laws; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

288. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

289. Titan Wellness's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Nguyen operated Titan Wellness, inasmuch as Titan Wellness was not

engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Titan Wellness to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Titan Wellness to the present day.

290.    Titan Wellness is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Titan Wellness in pursuit of inherently unlawful goals -- namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

291.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,300,000.00 pursuant to the fraudulent bills submitted through Titan Wellness.

292.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
#### Against Nguyen, ISO-Diagnostics, Baruch, Stein P.A., and Stein
#### (Violation of RICO, 18 U.S.C. § 1962(d))

293.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

294.    Titan Wellness is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

295.    Nguyen, ISO-Diagnostics, Baruch, Stein P.A., and Stein are employed by or associated with the Titan Wellness enterprise.

296.    Nguyen, ISO-Diagnostics, Baruch, Stein P.A., and Stein knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Titan Wellness's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Titan Wellness was not eligible to receive under the No-Fault Law because: (i) Titan Wellness unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the HME Licensing Laws; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

297.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

298.    Nguyen, ISO-Diagnostics, Baruch, Stein P.A., and Stein knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

299.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,300,000.00 pursuant to the fraudulent bills submitted through the Titan Wellness enterprise.

300.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Titan Wellness and Nguyen**
**(Under Fla. Stat. 501.201 et. seq.)**

301.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-276, above.

302.    Titan Wellness and Nguyen are actively engaged in trade and commerce in the State of Florida.

303.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

304.    Titan Wellness and Nguyen engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

305.    The bills and supporting documents submitted by Titan Wellness and Nguyen to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Titan Wellness's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

306.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Titan Wellness and Nguyen has been materially injurious to GEICO and its Insureds.

307.     The conduct of Titan Wellness and Nguyen was the actual and proximate cause of the damages sustained by GEICO.

308.     Titan Wellness and Nguyen's unfair and deceptive acts have caused GEICO to sustain damages of at least $1,300,000.00.

309.     By reason of Titan Wellness and Nguyen's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTH CAUSE OF ACTION**
**Against Titan Wellness and Nguyen**
**(Common Law Fraud)**

310.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

311.     Titan Wellness and Nguyen intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Titan Wellness for the Fraudulent Services.

312.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Titan Wellness was in compliance with the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the HME Licensing Laws, and eligible to collect PIP Benefits in the first instance, when in fact Titan Wellness never was in compliance with the Clinic Act, the Patient Brokering Act, the Anti-Kickback Statute, and the HME Licensing Laws, and never was eligible to collect PIP Benefits;

(ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

313.    Titan Wellness and Nguyen intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Titan Wellness that were not reimbursable.

314.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $1,300,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Titan Wellness and Nguyen through Titan Wellness.

315.    Titan Wellness and Nguyen's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

316.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### SIXTH CAUSE OF ACTION
**Against Titan Wellness and Nguyen**
**(Unjust Enrichment)**

317.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-276, above.

318.     As set forth above, Titan Wellness and Nguyen have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

319.     When GEICO paid the bills and charges submitted or caused to be submitted by Titan Wellness and Nguyen through Titan Wellness, it reasonably believed that it was legally obligated to make such payments based on Titan Wellness and Nguyen's improper, unlawful, and/or unjust acts.

320.     Titan Wellness and Nguyen have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Titan Wellness and Nguyen voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

321.     Titan Wellness and Nguyen's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

322.     By reason of the above, Titan Wellness and Nguyen have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,300,000.00.

<u>SEVENTH CAUSE OF ACTION</u>
**Against Stein P.A.**
**(Declaratory Judgment -- 28 U.S.C. §§ 2201 and 2202)**

323.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

324.     There is an actual case in controversy between GEICO and Stein P.A. regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

325.     Stein P.A. has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of the Clinic Act, Patient Brokering Act, and the Anti-Kickback statute.

326.    Stein P.A. has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

327.    Stein P.A. has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

328.    Stein P.A. has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

329.    Stein P.A. has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

330.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Stein P.A. has no right to receive payment for any pending bills submitted to GEICO.

### EIGHTH CAUSE OF ACTION
**Against Stein**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

331.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

332.    Stein P.A. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

333.     Stein knowingly has conducted and/or participated, directly or indirectly, in the conduct of Stein P.A.'s affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Stein P.A. was not eligible to receive under the No-Fault Law because: (i) Stein P.A. unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

334.     A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

335.     Stein P.A.'s business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Stein operated Stein P.A., inasmuch as Stein P.A. was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Stein P.A. to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the

Defendants continue to attempt collection on the fraudulent billing submitted through Stein P.A. to the present day.

336.    Stein P.A. is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Stein P.A. in pursuit of inherently unlawful goals -- namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

337.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $900,000.00 pursuant to the fraudulent bills submitted through Stein P.A.

338.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### NINTH CAUSE OF ACTION
**Against Stein, ISO-Diagnostics, Baruch, Titan Wellness, and Nguyen**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

339.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

340.    Stein P.A. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

341.    Stein, ISO-Diagnostics, Baruch, Titan Wellness, and Nguyen are employed by or associated with the Stein P.A. enterprise.

342.    Stein, ISO-Diagnostics, Baruch, Titan Wellness, and Nguyen knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Stein P.A.'s affairs through a pattern of racketeering activity consisting of repeated violations

of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that Stein P.A. was not eligible to receive under the No-Fault Law because: (i) Stein P.A. unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

343.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

344.    Stein, ISO-Diagnostics, Baruch, Titan Wellness, and Nguyen knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

345.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $900,000.00 pursuant to the fraudulent bills submitted through the Stein P.A. enterprise.

346.     By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**<u>TENTH CAUSE OF ACTION</u>**
**Against Stein P.A. and Stein**
**(Under Fla. Stat. 501.201 <u>et</u>. <u>seq</u>.)**

347.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-276, above.

348.     Stein P.A. and Stein are actively engaged in trade and commerce in the State of Florida.

349.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

350.     Stein P.A. and Stein engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

351.     The bills and supporting documents submitted by Stein P.A. and Stein to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Stein P.A.'s eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

352.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of Stein P.A. and Stein has been materially injurious to GEICO and its Insureds.

353.     The conduct of Stein P.A. and Stein was the actual and proximate cause of the damages sustained by GEICO.

354.    Stein P.A. and Stein's unfair and deceptive acts have caused GEICO to sustain damages of at least $900,000.00.

355.    By reason of Stein P.A. and Stein's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**ELEVENTH CAUSE OF ACTION**
**Against Stein P.A. and Stein**
**(Common Law Fraud)**

356.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

357.    Stein P.A. and Stein intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Stein P.A. for the Fraudulent Services.

358.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Stein P.A. was in compliance with the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute, and eligible to collect PIP Benefits in the first instance, when in fact Stein P.A. never was in compliance with the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

359. Stein P.A. and Stein intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Stein P.A. that were not reimbursable.

360. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $900,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by Stein P.A. and Stein through Stein P.A.

361. Stein P.A. and Stein's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

362. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TWELFTH CAUSE OF ACTION**
**Against Stein P.A. and Stein**
**(Unjust Enrichment)**

363. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-276, above.

364. As set forth above, Stein P.A. and Stein have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

365. When GEICO paid the bills and charges submitted or caused to be submitted by Stein P.A. and Stein through Stein P.A., it reasonably believed that it was legally obligated to make such payments based on Stein P.A. and Stein's improper, unlawful, and/or unjust acts.

366.   Stein P.A. and Stein have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Stein P.A. and Stein voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

367.   Stein P.A. and Stein's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

368.   By reason of the above, Stein P.A. and Stein have been unjustly enriched in an amount to be determined at trial, but in no event less than $900,000.00.

<u>**THIRTEENTH CAUSE OF ACTION**</u><br>**Against ISO-Diagnostics**<br>**(Declaratory Judgment -- 28 U.S.C. §§ 2201 and 2202)**

369.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

370.   There is an actual case in controversy between GEICO and ISO-Diagnostics regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

371.   ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO because it was unlawfully operated in violation of the Clinic Act, Patient Brokering Act, and the Anti-Kickback statute.

372.   ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

373.   ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to pre-determined fraudulent

protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

374.    ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

375.    ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

376.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO.

**FOURTEENTH CAUSE OF ACTION**
**Against Baruch and Stein**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

377.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

378.    ISO-Diagnostics is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

379.    Baruch and Stein knowingly have conducted and/or participated, directly or indirectly, in the conduct of ISO-Diagnostics' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that ISO-Diagnostics was not eligible to receive under the No-Fault Law because: (i) ISO-Diagnostics unlawfully was operated in violation of the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute; (ii) the

underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

380.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

381.    ISO-Diagnostics' business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Baruch and Stein operated ISO-Diagnostics, inasmuch as ISO-Diagnostics was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for ISO-Diagnostics to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through ISO-Diagnostics to the present day.

382.    ISO-Diagnostics is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by ISO-Diagnostics in pursuit of inherently unlawful

goals -- namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

383.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $600,000.00 pursuant to the fraudulent bills submitted through ISO-Diagnostics.

384.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

<u>**FIFTEENTH CAUSE OF ACTION**</u>
**Against Baruch, Stein P.A., Stein, Titan Wellness, and Nguyen**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

385.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

386.    ISO-Diagnostics is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

387.    Baruch, Stein P.A., Stein, Titan Wellness, and Nguyen are employed by or associated with the ISO-Diagnostics enterprise.

388.    Baruch, Stein P.A., Stein, Titan Wellness, and Nguyen knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of ISO-Diagnostics' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over four years seeking payments that ISO-Diagnostics was not eligible to receive under the No-Fault Law because: (i) ISO-Diagnostics unlawfully was operated in violation of the Clinic Act, the

Patient Brokering Act, and the Anti-Kickback Statute; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided -- to the extent that they were provided at all -- pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

389.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

390.    Baruch, Stein P.A., Stein, Titan Wellness, and Nguyen knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

391.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $600,000.00 pursuant to the fraudulent bills submitted through the ISO-Diagnostics enterprise.

392.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## SIXTEENTH CAUSE OF ACTION
### Against ISO-Diagnostics, Baruch, and Stein
### (Under Fla. Stat. 501.201 et. seq.)

393.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-276, above.

394.     ISO-Diagnostics, Baruch, and Stein are actively engaged in trade and commerce in the State of Florida.

395.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

396.     ISO-Diagnostics, Baruch, and Stein engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

397.     The bills and supporting documents submitted by ISO-Diagnostics, Baruch, and Stein to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) ISO-Diagnostics' eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

398.     Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of ISO-Diagnostics, Baruch, and Stein has been materially injurious to GEICO and its Insureds.

399.     The conduct of ISO-Diagnostics, Baruch, and Stein was the actual and proximate cause of the damages sustained by GEICO.

400.     ISO-Diagnostics, Baruch, and Stein's unfair and deceptive acts have caused GEICO to sustain damages of at least $600,000.00.

401. By reason of ISO-Diagnostics, Baruch, and Stein's conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**SEVENTEENTH CAUSE OF ACTION**
**Against ISO-Diagnostics, Baruch, and Stein**
**(Common Law Fraud)**

402. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-276, above.

403. ISO-Diagnostics, Baruch, and Stein intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through ISO-Diagnostics for the Fraudulent Services.

404. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that ISO-Diagnostics was in compliance with the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute, and eligible to collect PIP Benefits in the first instance, when in fact ISO-Diagnostics never was in compliance with the Clinic Act, the Patient Brokering Act, and the Anti-Kickback Statute, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

405.     ISO-Diagnostics, Baruch, and Stein intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through ISO-Diagnostics that were not reimbursable.

406.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $600,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the ISO-Diagnostics and Baruch through ISO-Diagnostics.

407.     ISO-Diagnostics, Baruch, and Stein's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

408.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## EIGHTEENTH CAUSE OF ACTION
### Against ISO-Diagnostics, Baruch, and Stein
### (Unjust Enrichment)

409.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-276, above.

410.     As set forth above, ISO-Diagnostics, Baruch, and Stein have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

411.     When GEICO paid the bills and charges submitted or caused to be submitted by ISO-Diagnostics, Baruch, and Stein through ISO-Diagnostics, it reasonably believed that it was

legally obligated to make such payments based on ISO-Diagnostics, Baruch, and Stein's improper, unlawful, and/or unjust acts.

412.    ISO-Diagnostics, Baruch, and Stein have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that ISO-Diagnostics, Baruch, and Stein voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

413.    ISO-Diagnostics, Baruch, and Stein's retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

414.    By reason of the above, ISO-Diagnostics, Baruch, and Stein have been unjustly enriched in an amount to be determined at trial, but in no event less than $600,000.00.

## JURY DEMAND

415.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against Titan Wellness, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Titan Wellness has no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Nguyen, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,300,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against Nguyen, ISO-Diagnostics, Baruch, Stein P.A., and Stein, compensatory damages in favor of GEICO in an amount to be determined at trial

but in excess of $1,300,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.     On the Fourth Cause of Action against Titan Wellness and Nguyen, compensatory damages in an amount to be determined at trial but in excess of $1,300,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.     On the Fifth Cause of Action against Titan Wellness and Nguyen, compensatory damages in an amount to be determined at trial but in excess of $1,300,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.     On the Sixth Cause of Action against Titan Wellness and Nguyen, more than $1,300,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

G.     On the Seventh Cause of Action against Stein P.A., a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Stein P.A. has no right to receive payment for any pending bills submitted to GEICO;

H.     On the Eighth Cause of Action against Stein, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $900,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.     On the Ninth Cause of Action against Stein, ISO-Diagnostics, Baruch, Titan Wellness, and Nguyen, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $900,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

J.      On the Tenth Cause of Action against Stein P.A. and Stein, compensatory damages in an amount to be determined at trial but in excess of $900,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

K.      On the Eleventh Cause of Action against Stein P.A. and Stein, compensatory damages in an amount to be determined at trial but in excess of $900,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

L.      On the Twelfth Cause of Action against Stein P.A. and Stein, more than $900,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

M.      On the Thirteenth Cause of Action against ISO-Diagnostics, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that ISO-Diagnostics has no right to receive payment for any pending bills submitted to GEICO;

N.      On the Fourteenth Cause of Action against Baruch and Stein, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $600,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

O.      On the Fifteenth Cause of Action against Baruch, Stein P.A., Stein, Sachs, Titan Wellness, and Nguyen, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $600,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

P.      On the Sixteenth Cause of Action against ISO-Diagnostic, Baruch, and Stein, compensatory damages in an amount to be determined at trial but in excess of $600,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

Q.       On the Seventeenth Cause of Action against ISO-Diagnostic, Baruch, and Stein, compensatory damages in an amount to be determined at trial but in excess of $600,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

R.       On the Eighteenth Cause of Action against ISO-Diagnostic, Baruch, and Stein, more than $600,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: September 2, 2022

/s/ John P. Marino
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen L. Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone: (904) 598-6100
Facsimile: (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

-and-

Yonatan Bernstein (FBN 1035899)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
Phone: (516) 357-3000
Facsimile: (516) 357-3333
yonatan.bernstein@rivkin.com

*Counsel for Plaintiffs*